### PETERSON V. SIGLINGER.

1. When the defendant, who was sheriff of the county, mingled with and conversed with jurors while they were deliberating upon their verdict and in the charge of a sworn bailiff, no reasonable excuse appearing therefor, such defendant is guilty of such irregularity as to justify the court in granting a new trial. Affidavits not denying the acts charged, but explaining them, *held* not to cure the irregularity in this case.

2. A failure of the party moving for a new trial to bring such irregularity to the attention of the trial court before the verdict is rendered, although the irregularity was known to his counsel before the verdict, will not be a waiver of the irregularity, as the trial court could not

have corrected the same. It is only such irregularities as may be corrected before verdict that are waived unless brought to the attention of the court as soon as discovered.

3. When a party assigns errors in the charge of the court, the abstract must show that exceptions were taken at the proper time to the portions of the charge alleged to be erroneous, or to the instructions given or refused at the request of the parties. Exceptions, to be available to the appellant, must affirmatively appear in the abstract.

(Syllabus by the Court. Opinion filed Aug. 17, 1892.)

Appeal from circuit court, Day county. Hon. J. O. ANDREWS, Judge.

Action to recover the value of a stock of merchandise levied on and sold by the defendant sheriff under attachment. Judgment for defendant. Plaintiff appeals. Reversed.

The facts are stated in the opinion.

*Glass & Van Buskirk*, for appellant.

It is reversible error for the defendant to be allowed to mingle with the jury in their room and hold conversation with them during their deliberations. Cattle v. Cattle, 19 Am. Dec. 200; Knight v. Inhabitants, 13 Mass. 217; Hobing v. State, 3 Minn. 262; Martin v. Morton, 32 Ill. 846; Oleson v. Meader, 40 Iowa, 663; Ritchie v. Holbrooke, 7 Serg. & R.; Jenson v. Root, 2 Cliff. 108; Cole v. Swan, 4 Greene, 32. Questions calling for inferences or conclusions are improper and not admissible. Boss v. Glasscock, 2 South. 314; Harris v. Clinton Tp., 31 N. W. 425; Keer v. Linsford, 8 S. E. 498; Robeling v. Merch., 41 N. W. 569.

If incompetent evidence has been admitted which may have influenced the jury, the court will reverse the case. Sherman v. Deleware, 3 N. E. 616; Simpson v. Armstrong, 30 N. W. 414. When the court undertakes to state a proposition of law to the jury it must state it correctly or a reversible error is committed. Brown v. Clark, 14 Pa. 469. Mere knowledge of the debtor's insolvency or of a judgment or of a threatened attachment is not sufficient to establish fraud, unless the object of the debtor is to delay, hinder, or defraud his creditors, and this purpose is known to the grantee. Atwood v. Simpson, 20 N. J. Eq. 150; Bank v. Northup, 22 N. J. Eq. 58; Waterbury v. Sturtevant, 18 Wend. 361; Fisher v. Hull, 44 Mich. 493.

Conflicting instructions nearly always mislead a jury, and are grounds for reversal when they have done so. Kelly v. Cable, 14 Pac. 635; Wassel v. Palmer, 14 N. W. 171; Glasscock v. Railroad, ·69 Mo. 589; Illinois v. Haugh, 91 Ill. 63; Gale v. Rector, 5 Ill. App. 481; Railroad v. Payne, 48 Ill. 63; Brown v. Clark, 14 Pa. 469.

*John H. Perry* and *Phil Skillman*, for respondent.

If communications with the jury are not influential or prejudicial they will not vitiate the verdict. Hayne, New Trial & App. 200; Thomp. Trial, §§ 2553, 2559; March v. State, 44 Tex. 64; People v. Boggs, 20 Cal. 432; Dower v. Church, 20 W. Va. 24; Flanigan v. State, 64 Ga. 63; McKinzie v. State, 26 Ark. 334; McCorkle v. Binns, 5 Bin. 348. Harmless error is not reversible. Paige v. O'Neal, 12 Cal. 483; Kisling v. Shaw, 33 Cal. 425; Hoag v. Pierce, 23 Cal. 188; Hastings v. Jackson, 40 Cal. 234. An exception to an instruction must be made at the time it is given. Comp. Laws, § 5079; Thomp. Trials, § 2394.

The instructions must be considered as a whole. Carrington v. P. M., 1 Cal. 476; Edwards v. Carey, 60 Mo. 572; Kendal v. Brown, 86 Ill. 387; Skiles v. Caruthers, 88 Ill. 458; Railroad v. Ingraham, 77 Ill. 309; Rice v. City, 40 *Id.* 638; State v. Maloy, 44 Iowa, 104; People v. Cleveland, 49 Cal. 577. If, from the evidence, the verdict is so clearly right that had it been different the court should have set it aside, such verdict will not be disturbed merely for error in instruction. Lyndy v. Pierson, 83 Ill. 241; Burling v. Railroad, 85 Ill. 18; Phillips v. Ocmulgee, 55 Ga. 633. The court may instruct the jury in the absence of counsel, after notice to counsel or parties. Section 5054, Comp. Laws; Haha v. Kelly, 34 Cal. 391; Herriter v. Porter, 23 Cal. 385; Nelson v. Lemmon, 10 Cal. 49.

CORSON, J. This was an action to recover the value of a stock of merchandise levied upon by writs of attachment issued in suits against one Sibb Peterson, a son of the plaintiff, and subsequently sold by the defendant, as sheriff, under executions issued on judgments obtained in the said attachment suits. The jury found a verdict in favor of the defendant, upon which judgment was rendered, and plaintiff appeals. A motion for a new trial was made in the court below, one of the grounds of which was as fol-

17—S. D.

lows: "Irregularity and misconduct of the defendant, in that he was by the deputy in charge of the jury allowed to mingle with them in the jury room during their deliberations, and then and there holding conversations with members of the said jury." The motion was supported by two affidavits, one, made by Mr. Glass, one of the attorneys for the plaintiff, being as follows: "W. S. Glass, being duly sworn, deposes that he is one of the attorneys for the plaintiff in the above-entitled action, and was present and assisted on the trial of this action at the last May term of court in and for said Day county aforesaid; that the jury in this action retired during the afternoon of the 24th day of May, A. D. 1890, and, after the said jury had been deliberating upon the testimony in this action for several hours, and about ten o'clock in the evening of said day, this deponent, with one Sibb Peterson, went to the courthouse in said county where the jury were deliberating; that said jury were then in charge of a deputy sworn to attend them during their deliberations; that said jury, after the adjournment of the court the evening of the 24th of May, aforesaid, had taken possession of the court room of said county as the place for continuing their deliberations; that upon this deponent going to said courthouse at ten o'clock in the evening aforesaid with one Sibb Peterson, a witness in said cause on the part of the plaintiff, they found the door opening into the stairs leading to said court room open, a part of said jury outside of said court room, and a part therein; that the said defendant was outside of the door leading to said court room where the said jury were deliberating, and about three or four steps up said flight of stairs; that several of the jurors composing said panel were then deliberating upon the testimony in this action, and he was within speaking distance of several of said jurors, and not more than about one step from one of said jurors, and conversing with one or more of said jurors; that thereafter, and within a short time, the said jury agreed upon and returned a verdict in this cause adverse to the plaintiff in this action." The affidavit of Mr. Sibb Peterson was substantially the same. The facts stated in these affidavits were not denied by the defendant but affidavits were read on his part purporting to explain what occurred

between the defendant and the jurors while he was with them. Defendant states in his affidavit that at about 10 o'clock in the evening. the circuit judge, who was then at the hotel, requested him to go to the courthouse and ascertain whether or not the jury would probably agree before midnight; that in pursuance of said request he went to the courthouse, and "that said jury were occupying the court room, and that the bailiff in charge of said jury had the door of said court room locked, (which door is situated at the foot of the stairs leading to said court room,) and found the bailiff in charge of said jury there guarding the door;" that he informed the bailiff of his errand, and he unlocked the door, and the defendant called the foreman, and informed him of the judge's request; that, while the foreman was considering what answer to return to the judge, two or three other jurors spoke to him, and passed out by him to the front of the building.

The question presented is, did the acts of the defendant constitute such an irregularity as to entitle the plaintiff to a new trial? While it may be that the defendant intended no wrong, and neither did nor said anything to the jurors to influence them in arriving at their verdict, the acts of the defendant were grossly improper. It appears the jury were in charge of a sworn officer, as bailiff, yet the defendant makes no explanation why he did not communicate the request of the judge to the jury through him, instead of going himself to the jury and mingling with the jurors. While the explanation of the defendant of his acts tends to present them in a more favorable light, still the fact remains that the proceedings of the defendant were so irregular as to subject them to a just criticism; and the fact that the jury returned a verdict soon after in his favor was calculated to arouse in the minds of the opposite party a grave suspicion that an improper influence had been exerted upon the jury. To avoid these suspicions, and give confidence to parties in the fairness and impartiality of jury trials, courts guard the jurors from all communications on the part of parties to the action while they are deliberating upon their verdict. This view was forcibly expressed by the supreme court of Massachusetts in Knight v. Inhabitants of Freeport, 13 Mass. 217. The court in that case says: "Too much care and precau-

tion cannot be used to preserve the purity of jury trials.   *   *   *
We cannot be too strict in guarding trials by jury from improper
influences.   This strictness is necessary to give due confidence to
parties in the results of their causes; and every one ought to know
that for any, even the least, intermeddling with jurors, a verdict
will always be, set aside." .In the later case of Com. v. Roby, 12
Pick. 496; the same court, speaking by Chief Justice SHAW, says:
"The result of the authorities is that .where there is an irregularity.
which may affect the impartiality of the proceedings, as
where meat and drink or other refreshment has been furnished
by a party, or where the jury have been exposed to the
effect of such influence, as where they have improperly separated
themselves, or have had communications not authorized, there,
inasmuch as there can be no certainty that the verdict has not
been improperly influenced, the proper and appropriate mode of
correction or relief is by undoing what is thus improperly, and may
have been corruptly, done; or where the irregularity consists in
doing that which may disqualify the jurors from proper delibera-
tion and exercise of their reason. and judgment, as where ardent
spirits are introduced, there it would be proper to set aside the ver-
dict, because no reliance can be placed, upon its purity and cor-
rectness.   But where the irregularity consists in doing that which
does not, and cannot, affect the impartiality of the jury, or dis-
qualify them for exercising the powers of reason and judgment,
as where the act done is contrary to the ordinary forms, and to
the duties which jurors owe to the public, the mode of correcting
the irregularity is by inamadversion upon the conduct of the jurors
or of the officers; but such irregularity has no tendency to impair
the respect due to such verdict."   In that case the jurors, while
deliberating upon their verdict, ordered refreshments from a neigh-
boring restaurant at their own expense.   The court held that while
this was an irregularity, yet it was not one for which a new trial
would be granted, as the court could see that the act could not
possibly have affected the impartiality of the jurors.   In Hare v.
State, 4 How. (Miss.) 193, the court of Mississippi, speaking by Mr.
Justice SHARKEY, and commenting upon the case of Com. v. .Roby,
says:   "To me it seems that the line of distinction is here so

clearly drawn that it is impossible to mistake it, and so justified by reason as to place it beyond doubt. It is briefly ·this: If the purity of the verdict might have been affected, it must be set aside. If it could not have been affected, it will be sustained. A verdict upon which doubt‘ rests cannot be good." The supreme ·court of Illinois, in Martin v. Morelock, 32 Ill. 485, speaking by Mr. Justice BREESE, says: "Whatever the nature of the conversations may have been is immaterial; it is sufficient they were had, and it amounts to such misbehavior, both on the part of the counsel and the jury, as to vitiate the verdict. The conclusions to which a jury may arrive must be the result of their own judgment, uninfluenced by any considerations addressed to them out of the jury box. Trials by jury would be of little worth, were parties or their 'attorneys permitted to interfere in any manner with the jurors after a case is committed to them and they are considering their verdict. The due administration of justice, as well as public policy, requires a total isolation of the jury from the parties or their counsel when they are deliberating on their verdict. The verdict, for this interference, should have been set aside." The supreme court of Kansas, in May v. Ham, 10 Kan. 598, says: "It may be that the conduct of Ham and others was innocent, and the parties connected therewith so testify. * * * It may be that the seeming misconduct of the plaintiff did not affect the verdict of the jury, but it may have done so." A new trial was granted. It will be noticed that in that case, as in the case at bar, the parties testified that the alleged acts were innocent, but the court did not feel bound to accept such a statement as conclusive of the fact. Oleson v. Meader, 40 Iowa, 662; Cole v. Swan, 4 G. Greene, 32; Johnson v. Root, 2 Cliff. 108.

The confidence of litigants in the verdicts of juries should not be weakened, nor the rule dictated by public policy relaxed, in cases of this character. The probability that a party who intermeddles with the jury while they are deliberating upon their verdict does so for an improper purpose is so great that courts will look‘with suspicion upon the evidence given in explanation of the act. But were this the case of an ordinary defendant, who had inadvertently mingled with the jurors while deliberating upon

their verdict, from want of a knowledge of legal proceedings, and who had fully shown that the act was perfectly innocent, and that no attempt was made, or was intended to be made, to influence the jury, we should feel reluctant to reverse the judgment and grant a new trial. We feel no such reluctance in this case, however, for the reason that the defendant was the sheriff of the county, and, as such officer, must be presumed to know that no party to the action should have communicated with the jurors while deliberating upon their verdict, and presumed to know that no person, except the bailiff in charge, could legally communicate with them on any matter while they were so deliberating. The danger that an improper influence would be exerted in a case where the sheriff himself is a party, were he permitted to mingle with the jurors, is much greater than when an ordinary individual is such party. It is well known that the sheriff of the county, by reason of his high official position and the power and patronage he possesses, has great influence with jurors. A word from him, when the jury have been long deliberating upon their verdict and are still undecided, might be sufficient to turn the scale in his own favor. The intermingling with the jurors by the defendant in this case, therefore, must necessarily have cast a suspicion upon the verdict that no explanation could entirely remove. There was apparently, in this case, not the slightest excuse on the part of the defendant for his intermeddling with the jurors. The bailiff in charge was there, with the doors to the jury room properly secured. No reason is given why he could not have communicated the judge's request to the foreman of the jury, or why the communication was not made through him. It seems to us such an irregularity can only be properly corrected by granting a new trial.

It is contended by the counsel for the respondent that, as the counsel for the appellant had knowledge of the irregularity before the verdict was rendered, he should have brought it to the attention of the court, and that his failure to do so was a waiver of such irregularity. But the irregularity was of such a character that the court could not have corrected it before verdict. It is only when the irregularity can be so corrected by the trial court before the verdict that a failure to bring it to the attention of the court,

when the party has knowledge of it, will be held to be a waiver of the irregularity. Oleson v. Meader, 40 Iowa, 662; Hayne, New Trials & App. p. 103.

Numerous errors are assigned upon the admission and rejection of evidence that it will not be necessary now to consider. Errors are also assigned upon the charge of the court, but an examination of the abstract discloses the fact that no exceptions appear to have been taken to any part of such charge, or to any requests refused or given. If errors are relied upon for a reversal of the judgment, they must be made to affirmatively appear by the abstract. If it is claimed that there were errors in the judge's charge, or in the giving or refusing instructions requested, it must affirmatively appear in the abstract that exceptions were taken at the proper time. Lumber Co. v. Pennington, 2 Dak. 467, 11 N. W. Rep. 497. The judgment of the circuit court is reversed, and a new trial ordered. All the judges concurring.