DOUGLASS et al. v. BYRNES et al.

(Circuit Court, D. Nevada.   July 9, 1894.)

No. 574.

EMINENT DOMAIN — CONDEMNATION PROCEEDINGS — MISCONDUCT OF COMMISSIONER—VACATING REPORT.

The report of commissioners to assess damages in condemnation proceedings will be set aside where it appears that one of the commissioners, after entering upon his duties, was retained by one of the parties to the proceeding as attorney, to defend a suit against him, even though the attorney for the other party may have known the fact, and did not complain until the report was filed.

This was a petition by J. M. Douglass and others against J. D. Brynes and others for the condemnation of a right of way for the construction of a mining tunnel.   Petitioners moved to set aside the report of the commissioners.

F. M. Huffaker and J. L. Wines, for plaintiffs.
W. E. F. Deal and E. L. Campbell, for defendants.

HAWLEY, District Judge.   Petitioners move the court to set aside the report (there is a majority and minority report) of the commissioners herein, upon the ground, among others, of irregularity in the proceedings of Commissioner C. E. Mack, who was selected by defendants, and appointed by the court, as a "disinterested person," to ascertain and assess the compensation to be paid defendants by petitioners for the right of way condemned for the purpose of constructing a tunnel under the provisions of the "Act to encourage the mining, milling, smelting or other reduction of ores in the state of Nevada."   Gen. St. Nev. § 261; Douglass v. Byrnes, 59 Fed. 29.

The fact is that this commissioner, previous to the time of his appointment, had acted as an attorney for one of the defendants, which was unknown to petitioners or their attorneys, or to the court; but it affirmatively appears that said commissioner was not regularly employed for said defendant, and had only been specially retained to try two cases in the justice's court, and that his employment for, and business with, the defendant was ended and settled prior to his appointment as a commissioner.   If the conduct of this commissioner had been in all other respects fair, impartial, and disinterested, this alleged irregularity would not be of sufficient gravity to justify the court in setting aside the report upon this ground; but the further fact appears that after his appointment as a commissioner, and after he had taken the oath to "honestly, faithfully, and impartially perform the duties imposed" upon him as a commissioner (Gen. St. Nev. § 262), and after all the testimony in this proceeding had been taken, but before the final argument, he accepted a retainer and acted as an attorney for the same defendant in the trial of another cause in the justice's court.   The fact of such employment was known to petitioners' counsel.   No objection was made to this conduct upon the part of

the commissioner until after the report of the commissioners was filed. It is, of course, conceded by defendants' counsel that the acts of the commissioner were such as to justify this court in setting the report aside, and that it would be its duty, in the interest of public justice, to do so, were it not for the fact that petitioners' counsel were fully advised of the employment of the commissioner, and made no objection thereto; but for this reason it is earnestly argued that the objection goes only to the competency of the commissioner, and that it was waived by the failure of petitioners' counsel to object at the time to any further proceedings being taken in the case. This position is sought to be maintained upon the general and familiar principle, almost universally acknowledged, that parties in trials before a jury or court, or in other proceedings, having knowledge of the disqualification of a juror, judge, commissioner, referee, or arbitrator, must object to his acting as such when informed of such disqualification, or else they will thereafter be considered as having waived the same.

All the authorities cited by defendants' counsel relate to the disqualification of the juror or commissioner at the time of his acceptance or appointment, by reason of his relationship to one of the parties (Groton v. Hurlburt, 22 Conn. 194; Towns v. Stoddard, 30 N. H. 24; Robb v. Brachman, 38 Ohio St. 425), or interest in the result of the controversy (Davis v. Allen, 11 Pick. 468), or not possessing the qualifications required by the statute (Inhabitants of Whately v. County Com'rs, 1 Metc. [Mass.] 336; Walker v. Railroad Co., 3 Cush. 1; In re Wells County Road, 7 Ohio St. 17; Steele's Petition, 44 N. H. 220; Supervisors v. Stout, 9 W. Va. 703). A fair type of the cases relied upon by defendants is that of Inhabitants of Ipswich v. County Com'rs of Essex Co., 10 Pick. 519, where one of the commissioners, in proceedings taken to lay out a highway, was the owner of land in Ipswich through which the road passed; and it was claimed that he was not a disinterested person, within the contemplation of the law. The court said:

"It was well known to the town that Mr. Wildes was a freeholder there, because they had taxed him. They were parties to the proceedings, and might have objected to his sitting if they thought fit; but they might also waive the exception if they chose, and if they were satisfied that the decision would be impartial. By consenting to proceed, with a full knowledge of the ground of exception, the exception was waived. It would be attended with great injustice were we to hold otherwise. A party might take his chance for a favorable decision, knowing of an exception which would invalidate the proceedings if unfavorable, and intending in that event to rely upon it. Besides, if the exception had been seasonably taken, the commissioner might have withdrawn, or been replaced by one against whom no exception would lie."

Thomp. & M. Jur. § 275 (2), and authorities there cited.

But it will readily be seen that this principle falls short of determining the question involved in this case. If the objection rested solely upon the fact that the commissioner, prior to his appointment, had been employed by one of the defendants, and that fact was known to petitioners, then the cases cited and relied upon by defendants would be directly applicable; but the affidavits show that

that fact was not known to petitioners until the report of the commissioners was filed. The real objection, however, is the subsequent conduct of one of the defendants and of the commissioner. A juror not disqualified by statutory grounds, or, even if disqualified, accepted, is bound to so act as to be entirely free from any line of conduct which might have a tendency to influence his action as a fair and impartial juror. This is a duty which he owes to himself, to the parties to the suit, and to the court. Where there has been any such misconduct on the part of a juror as might affect his impartiality, or disqualify him for the proper exercise of his reason or judgment, the verdict should be set aside. This rule has been frequently announced in criminal cases. Com. v. Roby, 12 Pick. 519; McCann v. State, 9 Smedes & M. 468; Davis v. State, 35 Ind. 496; People v. Brannigan, 21 Cal. 340; People v. Turner, 39 Cal. 375; People v. Myers, 70 Cal. 583, 12 Pac. 719. In the trial of civil cases, if the rights of the litigants were alone concerned, it might with some force be argued that the losing party, with full knowledge of all the facts, who made no objection, but took his chances of a favorable verdict, should be estopped to complain of the improper conduct of the commissioner. In cases where the conduct of a juror or commissioner, although improper and censurable, is not such as to prevent a fair and impartial administration of justice, this would undoubtedly be a proper course to pursue; but under all the facts and circumstances of this case, even if the court should confine itself solely to the question of protecting the rights and interests of the parties, it is questionable whether petitioners should be estopped from complaining upon the ground that they had waived their rights by not making the objection before the commissioners, for it might perhaps be said that petitioners had no opportunity to object without prejudicing their case. Petition for Highway in Newport, 48 N. H. 433; McDaniels v. McDaniels, 40 Vt. 363; Peterson v. Siglinger (S. D.) 52 N. W. 1060. If the agent of the defendant corporation, who was a witness in the case, had informed both parties to the proceedings, or their counsel, that he desired to employ the commissioner to try a small case in the justice's court, and asked if there were any objections, and both parties had willingly given their consent, then the case would be deprived of one of its most unpleasant and suspicious features. But no such request was made. The agent employed the commissioner, so far as the record shows, without the knowledge or consent of either of the counsel in this proceeding. It does, however, appear that Mr. Huffaker, one of petitioners' counsel, who was attorney for the plaintiff in the justice's court, knew, on the day the suit was brought, that the commissioner had been employed to defend the suit; it further appears that, on the day of the trial before the justice, this attorney accompanied the commissioner from Virginia to Silver City, and return; and upon this ground strong contention is made that petitioners gave their consent to the employment of the commissioner. But, without pursuing this particular branch of the question further, the decision will be based upon other and stronger grounds.

The court's duty does not necessarily end by simply protecting the litigants. In order to preserve public confidence in the administration of justice it is essential that all judicial trials and proceedings should be kept absolutely free from any suspicion of improper or undue influence. The business of the court should be so conducted as to inspire and demand the confidence and support of the public; otherwise, the trial of causes would be a mere mockery. Justice would be subverted, and become a byword of reproach. Even bribery and corruption would be encouraged and promoted by the direct approval of the courts. The amount of the fee received by the commissioner is immaterial. It is the principle of the thing that controls. If he had the right to receive $30 from the defendant to try a case one day, he had the right to receive $50 from the petitioners the next day, provided the petitioners had a case and were willing to employ him. It requires no argument to show what results would be likely to follow if this principle should be recognized or sanctioned by the courts. To prevent such methods in the trial of causes being carried out, courts are justified in looking at the principle involved, independent of the rights of parties, and should so act as to protect the fountains of justice, and keep them pure and free from suspicion, irrespective of the question whether the objections were timely made. The courts, in so acting, are not confined to extreme cases of bribery or corruption, or of actual prejudice or bias. No wrong may have been intended. No thought of improper influence may have entered the mind of the defendant who employed the commissioner, and the commissioner may have been entirely free from any prejudice in favor of the defendants. But the defendant had no right to employ the commissioner while he was acting as a "disinterested person" in said proceedings, and the commissioner should have held himself aloof from accepting employment and receiving pay therefor while he was so engaged. It is the duty of the court to set aside the report, in justice to itself, as well as to the petitioners, so that whatever proceedings may be had herein shall be conducted impartially and fairly, and that the report of the commissioners, when filed, may be entitled to respect, and merit the confidence of the court that it is free from any bias or prejudice upon the part of any commissioner, and not clouded by the misconduct of either of the parties. Litigants in courts of justice must learn, if they do not already know, that their interests cannot be promoted, upheld, or sustained by any conduct of this sort; and it is the duty of the court to let the general public know that such misconduct will not be tolerated in any case. Jurors, commissioners, arbitrators, and referees, as well as courts, should so conduct themselves that neither the parties nor the general public could have any just cause of complaint or any reasonable ground for suspicion against their fairness, impartiality, and disinterestedness. Where there has been any conduct upon their part which might have a tendency to disqualify them from the exercise of a fair and impartial consideration of the case, and it does not affirmatively appear to the satisfaction of the court that it did not have that result, it is the duty of the courts to set their verdicts

and reports aside. The views herein expressed are sustained' by abundant authority. Mining Co. v. Showers, 6 Nev. 602, and authorities there cited; Railroad Co. v. Porter, 32 Ohio St. 333; In re Buffalo, etc., R. Co., 32 Hun, 292; Ensign v. Harney, 15 Neb. 330, 18 N. W. 73; Bowler v. Washington, 62 Me. 302; Palmer v. Railroad Co., 2 Idaho, 298, 13 Pac. 429; McDaniels v. McDaniels, supra; Doud v. Guthrie, 13 Ill. App. 658; Johnson v. Hobart, 45 Fed. 542; Burke v. McDonald (Idaho) 29 Pac. 100; Patten's Petition, 16 N. H. 283; Deacon v. Shreve, 22 N. J. Law, 183; Blake v. County Com'rs, 114 Mass. 585; Peavey v. Wolfborough, 37 N. H. 293; Bank v. Fulmer, 31 N. J. Law, 57; Burrows v. Dickinson, 35 Hun, 500; Thomp. & M. Jur. § 364 (5), (7), pp. 438, 439, and authorities there cited.

In Mining Co. v. Showers, in an able and carefully prepared opinion, the law upon this subject was clearly expressed. There the prevailing party had treated the jury. The court, after reference to the rule of the common law which prohibited the separation of jurors and the changes that had been made in this rule, said:

"But so much of the common law as was essential to its wise policy in this behalf, and consistent with the practical administration of justice under the changed conditions wrought by advancing civilization, remains in full force, and must so remain until abrogated by legislative enactment. That policy was to obtain twelve impartial and competent jurors, and, after their selection, to keep them so by securing them, as far as might be, from the possibility of improper intercourse or undue influence. * * * To permit eating and drinking at the expense of the prevailing party is now, as it ever was, impolitic, unsafe, and unnecessary. The weak and facile may be influenced by such attentions, and though it appears in a given case that none have been influenced, still the practice breeds suspicion and dislike of a mode of trial most admirable and useful if it attain and deserve the confidence and respect of the public; worse than useless if it fail of either such attainment or desert."

In Ensign v. Harney, two of the jurors requested as a favor, and obtained from the attorney of one of the parties, his horse and buggy to carry them home and return on the following Monday. A verdict having been rendered in favor of the attorney's client, it was set aside, and a new trial awarded. Affidavits were filed showing that the transaction was open and above board, and was not done with the intention of exercising an influence on the jurors, and that the opposing attorneys had been in the habit of extending like favors to the jurors, and that no complaint was made. The court said:

"Unless fair-minded, unbiased jurors can be selected, a trial becomes a mere farce, dependent, not upon the merits of the case, but the extraneous circumstances, such as the bias, prejudice, or interest of the jury. * * * Where a juror is accepted as being impartial, he must remain so during the trial. To permit him to accept favors from either party is to put him under ·obligations to such party, the tendency of which is to bias his judgment. Nor is it material that such favors were not intended to influence the juror, as it cannot be determined how far they may have had that effect, and such misconduct will vitiate the verdict."

In Re Buffalo, etc., R. Co., where there was a motion to set aside the report of the commissioners awarding to the respondent damages for the right of way through his land, it appeared, among other things, that the commissioners rode to respondent's farm in a carriage provided by him to enable them to view the premises; that

one of them took supper with him, and was sent home in a carriage provided by the respondent; that another one of the commissioners, after the report was signed, accepted from respondent a sum of money for his services and expenses in excess of the amount allowed by statute.  The court said:

"The acts referred to probably had no effect upon the result in the present case, but it will not do to make a precedent of them, for, if such practices were to become common, it would be easy for designing men to make them a cover for corruption."

In Thompson & Merriam on Juries the authors, in treating of the subject of tampering with the jury by the successful party, say:

"Where the successful party to the suit is shown to have attempted, by improper means, to influence the verdict in his favor, whether by corrupting or intimidating particular jurors, by arousing prejudice in their minds against the opposite party or his cause, or by undue hospitalities or civilities, the verdict will be set aside, on grounds of public policy, as a punishment to the offender, and as an example to others, without reference to the merits of the controversy, and without considering whether the attempt was successful or not." Thomp. & M. Jur. § 348 (3), p. 406, and numerous authorities there cited; Hayne, New Trial, § 48, and authorities there cited.

Petitioners' counsel cited no authorities whatever in relation to the questions discussed in this opinion.  Their contention was that the report should be set aside upon the grounds of excessive damages appearing to have been given under the influence of passion or prejudice; insufficiency of the evidence to justify the report; that it was against the weight of evidence, and contrary to law.  But the conduct of one of the parties and of the commissioner has placed it beyond my power to examine the report upon the merits, further than to say that the reading of it has not removed the impression that the conduct of defendant may have biased the commissioner in his favor, whether it was so intended or not.

The report of the commissioners is set aside, and the commissioners are discharged.  Upon proper application, three disinterested persons will be appointed as commissioners herein, as provided by statute, and they will be admonished to keep themselves "disinterested" until their duty in the proceedings is fully performed.