MILWAUKEE LIGHT, HEAT & TRACTION COMPANY, Appellant,
vs. ELA COMPANY, Respondent.

*March 16—April 5, 1910.*

*Railroads: Eminent domain: Nature of proceeding: "Suit:" Powers*
*of court: Vacating award: Appeal: Discretion.*

1. A proceeding under secs. 1845–1851, Stats. (1898), to acquire
property by the right of eminent domain, is a suit in court, a
judicial proceeding from the commencement to the end, except
as to an appeal from the award; to that extent, it is in the na-
ture of an ordinary action in court.

2. A proceeding as aforesaid being a suit, commenced by filing the
petition, the court has all inherent power in respect thereto
which it has, in general, respecting actions or suits in the na-
ture of actions, including power to vacate the award of com-
missioners therein for improper conduct, or such conduct of
parties.

3. A proceeding as in No. 1 being a suit in court, and not denom-
inable as an action, or being such because commencible by the
service of a summons, its statutory name is "a special proceed-
ing," since all civil remedies under the Code are divided into or-
dinary actions or such proceedings.

4. Though the Code abolished the common-law distinctions between
suits and actions and did away, entirely, with the name "suits"
as the name of a class of judicial remedies, the essential char-
acter of such remedies has not been changed. A suit now is
either an action or a proceeding in the nature of an action in
court.

5. In vacating the award of commissioners in condemnation pro-
ceedings for improper conduct on their part, the court acts by
virtue of its inherent power which stands by the side of and
goes with, or without, the statute, where necessary in the due
administration of justice.

6. The appeal allowable in condemnation proceedings is solely to re-
view the honest judgment of the commissioners respecting com-
pensation for property taken. It does not undo, directly, the
wrong committed by improper conduct of commissioners such
as would vitiate a verdict in a civil action.

7. The landowner is entitled to the fair judgment of the commis-
sioners in condemnation proceedings, and to appeal therefrom if
dissatisfied.

8. A motion to set aside the award of commissioners for improper conduct is addressed to the sound discretion of the court, and the result will not be disturbed on appeal unless it clearly appears to have been the result of abuse of discretion or mistake of law.

[Syllabus by MARSHALL, J.]

APPEALS from orders of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Affirmed.*

In proceedings to acquire land by the right of eminent domain pursuant to secs. 1845 to 1851, Stats. (1898), after the commissioners filed their award respondent, as one of the property owners affected, to whom was awarded $764, moved the court, on affidavits and due notice to appellant, to set aside the report as to its land because of misconduct of the commissioners. The motion was granted and the entire proceedings of the commissioners as to such land were vacated and they were discharged as disqualified from further serving in the matter. There was proof tending to support the grounds for such order, which were, as follows:

(1) One of the attorneys for appellant, during the proceedings before the commissioners, treated one of them to intoxicating liquor.

(2) The hotel expenses of the commissioners during the proceedings before them were paid by appellant, or one of its attorneys, with its knowledge.

(3) The commissioners having agreed to award respondent $880, and duly prepared their report to that effect and delivered it to one of their number for filing with the clerk of the circuit court and knowledge thereof having come to one of appellant's attorneys, he discussed the same with a member of the commission, whereupon such member caused the report to be reconsidered and the award changed to $764.

(4) One of the commissioners communicated privately with a person not produced or sworn as a witness, from whom such commissioner secretly acquired information as to the value of the land, which he considered.

Upon the motion being brought on to be heard and moving affidavits read and arguments in support of the motion concluded, appellant's attorney requested an adjournment for ten days to enable him to produce counter affidavits. During the argument on such application, such attorney substantially admitted the claim made in the moving affidavits, specified in the court's first and second grounds aforesaid. Whereupon the court decided that, upon such admissions alone, the motion should be granted, and denied the application for a continuance. The order complained of was accordingly made.

The petitioner thereafter moved the court, on notice and affidavits, to vacate the order. The affidavits were to this effect: Neither the petitioner nor any one in its behalf promised to pay the commissioners' hotel expenses, in excess of the amount fixed by the court. The hotel proprietor was not directed by the petitioner, or any one in its behalf, to charge the hotel expenses to it or its attorney. Such attorney, on the hearing to vacate the award, admitted that on one occasion he purchased liquid refreshments for one of the commissioners, and that, possibly, the hotel bills might have been charged to the petitioner, but that they had not been paid; that the commissioners were informed that the hotel bills might be left unpaid until the close of the hearing, when a settlement would be made between them and the petitioner and the balance due them under the order of appointment would be paid; that upon the first hearing the attorney asked for a continuance because he had not sufficient knowledge, presently, to show the facts from petitioner's standpoint, and that the judge denied the application upon the ground that his admissions were sufficient to warrant granting the motion.

The commissioners acted upon their own judgment in making the award. The amount agreed upon at first was $880, but upon further consideration it was reduced to the smaller

amount, which was just. Petitioner's attorney at no time stated to the commissioners, or either of them, that $880 was too high, or what sum they should allow. He did, in the barroom of the hotel, openly entertain one of the commissioners with others. The hotel expense bills of the commissioners were charged to them respectively. The landlord was not informed that the petitioner would be responsible therefor.

The motion to set aside the order vacating the award was denied, it being recited in the decision that such motion was based upon the theory that the court was without jurisdiction to make the order sought to be vacated; that subsequently an appeal from the order of vacation was taken; that later, and some seven months after the motion was made and six months after the date of the appeal, such motion was heard, whereupon respondent raised the point that the appeal superseded the motion, filing a brief to support such contention, the petitioner declined to reply thereto, and thereupon the court ruled in favor of respondent, and dismissed the motion.

The petitioner separately appealed from both orders.

For the appellant there was a brief by *Louis H. Rohr,* attorney, and *Clarke M. Rosecrantz,* of counsel, and oral argument by *Mr. Rosecrantz.*

For the respondent there was a brief by *Gilbert, Jackson & Ela,* and oral argument by *Emerson Ela.*

MARSHALL, J. The most important proposition submitted for discussion and decision is, In condemnation proceedings under secs. 1845 to 1851, Stats. (1898), does the court have jurisdiction to vacate the award of the commissioners on account of their prejudicially improper conduct and discharge them as incompetent to further proceed? The proposition must be examined from the viewpoint of the nature of the proceedings, the express authority of the court therein, and its inherent power as well.

Sec. 1846, Stats. (1898), provides for the initiation of a condemnation proceeding by filing a petition in the office of the clerk of the circuit court having jurisdiction of the matter, praying for the appointment of commissioners by such court, or the judge thereof. The nature of the proceeding is indicated by the declaration in such section that "the filing of such petition shall be the commencement of a suit in said court." Being a "suit" in court from its initiation, the proceeding must, necessarily, continue to be a judicial proceeding in the nature of a suit in court until its termination by the filing of the award, or turned into an action in court by appeal from the award as provided in sec. 1849. Such section, in effect, provides that the appeal, as regards the subject involved, shall be considered a distinct proceeding in court with the characteristics of an action at law. So the proceeding must be in the nature of a judicial controversy in court of some sort from the beginning to the end. It is a judicial remedy, within the meaning of sec. 2594, Stats. (1898). In the broad sense, it is an action from the beginning, in that it is a judicial remedy for the enforcement or protection of a right, though it is not such, in the strict statutory sense, because it is not an "ordinary action" for that purpose commenced by service of a summons under sec. 2629, Stats. (1898). Only such are actions under sec. 2595, Stats. (1898). Not being, strictly speaking, an action under the Code and yet a judicial remedy denominated a suit, which in the broad sense applies to any proceeding in a court of justice by which a party pursues the remedy which the law affords for litigating a subject of controversy between adverse parties (*Kohl v. U. S.* 91 U. S. 367, 375; *Kuhl v. C. & N. W. R. Co.* 101 Wis. 42, 77 N. W. 155; *State ex rel. Durner v. Huegin,* 110 Wis. 189, 85 N. W. 1046), its statutory name must be a special proceeding, under sec. 2596, as every civil judicial remedy in a court of justice under the Code must have either the statutory name of a "civil action" or

a "special proceeding." Sec. 2594. Notwithstanding the common-law distinctions between actions and suits, as applied to legal and equitable remedies, are not known under the Code (sec. 2600), there may be many remedies in the nature of a civil action falling within the broad signification of suit as used in sec. 1846. Every civil remedy which is not known by the statutory characterization of an "ordinary action," where parties are arranged adversely in judicial proceedings, one to prosecute or enforce a right or redress or prevent a wrong, the other having opportunity to defend, is a proceeding in the nature of a civil action, and, generally, classible as a special proceeding. The final determination is in the nature of a final judgment in a suit or proceeding in the nature of a civil action. So it has been said that the abolition of common-law names has not and cannot change the essential character of judicial remedies. *State ex rel. Durner v. Huegin,* 110 Wis. 189, 223, 85 N. W. 1046. That applies to a purely statutory remedy when the legislature so manifests its pleasure by declaring that it shall be a suit.

The foregoing general treatment would sufficiently suggest the nature of the remedy provided for taking private property for railroad purposes by the right of eminent domain, even if the legislature had not seen fit to give it a name. In giving it the name of "a suit," which is unknown to the Code in the classification of remedies, the broad common-law meaning suggested must have been intended, contemplating existence in respect thereto of all the inherent power of courts of general jurisdiction in such matters, and such is the trend of previous decisions of this court.

In *Cornish v. M. & L. W. R. Co.* 60 Wis. 476, 19 N. W. 443, it was observed that the meaning of the term "suit" in sec. 1846 is that the proceeding shall be regarded from its commencement to the end as a special proceeding under the control of the court; that it is a suit by the party seeking to

take the land against the owner of the land and *in rem*.  *Watson v. M. & M. R. Co.* 57 ,Wis. 332, 15 N. W. 468.  Consistent therewith the statute provides, *first,* for a judicial hearing of the application for the appointment of commissioners on due notice to the adverse parties; *second,* for the appearance of incompetents, as in an ordinary civil action; *third,* for a judicial determination of the right to take and the extent of the taking; *fourth,* for the appointment of commissioners, regulating the time of hearing before them and limiting the time for them to perform their duty; *fifth,* for a hearing by the parties before the commissioners; *sixth,* for filing their determination in court; *seventh,* for a record thereof in the judgment book of the court; *eighth,* for enforcement of the judgment on one hand by the ordinary process for obtaining possession of land pursuant to a judgment of the court, and, on the other, for enforcement of the judgment by execution; *ninth,* for bringing in new parties and curing defects and informalities by amendment, as in case of judicial proceedings generally; *tenth,* for requiring notice to be given to any party at any time which in the sound discretion of the court may be thought proper; and *eleventh,* for appointing other commissioners in place of any who may die or refuse or neglect to serve, or be incapable of serving.

It would seem to follow, necessarily, that the court possesses the same inherent power over the award of the commissioners as it does over the determination of triers of fact in any judicial proceeding.  That the circuit courts of this state under the constitution have very broad discretionary power to do things which may be deemed necessary or proper by the judicial head to guard the purity of the channels of justice, and that it includes, ordinarily, vacating the determination of triers of fact for prejudicial misconduct, does not need discussion.  That it extends to dealing with an award of commissioners, as in this case, was held in *Matter of N. Y. C. & H. R. R. Co.* 64 N. Y. 60, overruling some previous de-

cisions in New York, upon which counsel for appellant rely.
The holding in that case and others in jurisdictions where,
unlike the statutory practice here, the award is required to
be confirmed by the court, was not based on and did not have
any reference whatever to that feature, as appellant's counsel
seem to think.    That is plainly indicated by this language
from the opinion:

"The fallacy is in assuming that the Special Term, in va-
cating the prior orders, was traveling in the path of the stat-
ute.    It was exercising its inherent power over the proceed-
ings of the court to annul, vacate and set them aside, which
power stands by the side of the statute and goes with it.    Af-
ter this was done, it entered again upon the way of the stat-
ute."

The supreme court of Michigan, after leaning to the idea
of the early New York decisions, adopted the doctrine of the
later one from which we have quoted.    *Fort Street U. D. Co.
v. Backus,* 103 Mich. 556, 557, 61 N. W. 787.

It should be noted that the Michigan court clearly nega-
tived the idea that the authority to vacate the award is de-
pendent upon the statutory requirement for confirmation of
the report.    It was put upon the broad ground of the court's
inherent power to preserve the integrity of judicial determi-
nations.    The court said, in effect, that the power could be
exercised in the proceeding for confirmation or a proceeding
to set aside the report.    There is abundance of authority to
the same effect.    Decisions in states going upon the ground
that the proceeding, in contemplation of the statute, is not a
judicial remedy, are of no consequence, since here it is such,
as we have seen.

In *Douglass v. Byrnes,* 63 Fed. 16, it was taken for
granted that judicial power existed to set aside an award in
the circumstances of this case.    The power was treated as
being of the same nature and as broad, in such circumstances,
as that to set aside the verdict of a jury for misconduct in

ordinary civil actions. The court said, in effect, that in case of misconduct of the commissioners even casting well grounded suspicion upon their impartiality, it is the duty of the court to set aside the award, not only as a matter of justice to the party injuriously affected, or possibly so, but in the interest of public justice.

It is suggested that the statute contemplates the appeal proceeding as the only one for a review of the award. That seems clearly unsound. There is no more reason for holding that the right of appeal is the only one open to the landowner in case of misconduct of the commissioners than is that such right is the only remedy in· case of misconduct of triers of issues of fact in other civil suits. The appeal is a remedy for reviewing the result of judgment on the question of damages. It does not raise any other question. The landowner is entitled to the fair judgment of an impartial commission, and then to appeal therefrom, if he sees fit, to review such judgment. To hold that he may be bound by conduct of the commissioners which would render their determination absolutely void, or voidable, in an ordinary civil suit, leaving him only the expensive remedy of appeal, which would not test, at all, the good-faith character of the award, would be to take from him a statutory right and open the way to, if not invite, reprehensible and, in large measure, remediless conduct of parties and commissioners. It would remove the proceedings from the high character of the judicial plane to the lower level of irresponsible trickery and manipulation.

The remaining question is whether the ground for setting aside the report was sufficient. That does not call for a discussion as to whether, as an original matter, it appears that there was really prejudicial misconduct. The only question is whether there was such misconduct as to render it competent for the trial court, within its broad discretionary power, to set aside the report. In other words, whether there was

sufficient ground to preclude, on appeal, holding that the court abused its discretion.

The foregoing is sufficient to indicate that, not only must it appear that there was no very good ground for the trial court's action, but the ground must appear to be so trifling that there is no reasonable justification for the order complained of, else it cannot be disturbed. That calls for a very strong case in favor of appellant. Too strong a case, it seems, to be read out of the record in face of the conceded fact, that the attorney for the petitioner favored one or more of the commissioners by treating to intoxicating liquors, and the fact that the award, after being once agreed upon at $880 and the report completed and intrusted to one of the commissioners for filing, was recalled and the matter reconsidered, resulting in the award being very largely reduced, in connection with the sworn proof, which the court had a right to believe, notwithstanding it was denied under oath, that the report was recalled after the petitioner's attorney discussed it with one of the commissioners.

By rule of the common law a verdict of triers is liable to be set aside for their misconduct without regard to its being really prejudicial. Little attentions to the triers by parties, or in their behalf, liable to influence the "weak and facile" is of itself, by such rule, amply sufficient to warrant setting aside a determination by a jury. Many illustrations of that are given in *Douglass v. Byrnes, supra.* "Undue hospitalities or civilities" are effective as well as other and more immoral corrupting influences, and whether successful in accomplishing a prejudicial result or not. Thompson & M. Juries, § 348; Hayne, New Trial, § 48.

Doubtless the rigor of the common law has been very much softened by the spirit of the Code incorporated into sec. 2829, Stats. (1898), providing that "the court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights

of the adverse party, . . ." though the policy of the common law to keep the channels of justice free not only from any taint of improper influence, but from any well grounded suspicion thereof, pervades the present system and is as forceful as ever and must ever so continue though, in deference to the "practical administration of justice" as commanded by the Code, doubtless some matters must be regarded as inconsequential now that would formerly have been so regarded. However, whenever it appears that methods have been resorted to, such as entertaining jurors or other triers, or giving them favors, or privately discussing with them the subject to be decided, for the purpose, actual or apparent, of influencing the decision, and which may probably have so resulted, it is within the power, and within the duty of the court to set aside the determination.

Speaking of such a situation in *Douglass v. Byrnes,* 63 Fed. 16, the court said:

"It is the duty of the court to set aside the report, in justice to itself, as well as to the petitioners, so that whatever proceedings may be had . . . shall be conducted impartially and fairly, and that the report of the commissioners, when filed, may be entitled to respect, and merit the confidence of the court that it is free from any bias or prejudice upon the part of any commissioner, and not clouded by misconduct of either of the parties. Litigants in courts of justice must learn, if they do not already know, that their interests cannot be promoted, upheld, or sustained by any conduct of this sort; and it is the duty of the court to let the general public know that such misconduct will not be tolerated in any case."

That was said in respect to a circumstance not as significant, it seems, as those in this case. This court, so far as it has been called upon to deal with the subject, has declared the same judicial policy. *State ex rel. Curtis v. Town Board,* 107 Wis. 1, 82 N. W. 550; *Shelby v. Miller,* 114 Wis. 660, 91 N. W. 86; *State ex rel. Dosch v. Ryan,* 127 Wis. 599, 106 N. W. 1093; *McMillan v. Fond du Lac,* 139

Wis. 367, 120 N. W. 240. The court is disposed to vindicate such policy upon all occasions, to the end that the channels of justice may be kept above reasonable ground for suspicion of being moved by improper influences and that parties litigant and the public as well may have the most perfect confidence in the honesty of courts and judicial agencies, and rightly attribute fallibility, which will be evidenced now and then so long as the court can only speak through human agencies, to error of judgment or something foreign to any element of moral turpitude.

It follows that the order setting aside the award of the commissioners must be affirmed and without necessary regard to the merits of such award. The recall of the report after the conceded occurrences and other circumstances, which it was competent for the court to believe, did take, or may probably have taken, place, were quite suspicious. The very material change in the award after the recall may well have convinced the trial court that it was its duty to vacate the award and discharge the commissioners, not merely that it was proper to do so.

What has been said is sufficient to indicate that the motion to vacate the first order was properly denied. Therefore, we need not specially discuss any question on the appeal from the second order.

*By the Court.*—The order setting aside the award of the commissioners and discharging them is affirmed, and the order denying the motion to set aside such first order is likewise affirmed.