KUHL, Respondent, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*October 11 — November 1, 1898.*

*Eminent domain: Construction of railroad in street: Rights of abutting owners on opposite side: Consequential damages: Limitation of actions: Assumption of liability by vendee of railroad.*

1. In the absence of a statute requiring the payment of damages to property where no part of it is taken, as a condition of the exercise of the right of eminent domain to acquire property for public use, such injuries are deemed purely consequential and *damnum absque injuria.*

2. Ch. 255, Laws of 1889, to the effect that opposite owners of lands abutting on a street or highway shall have an equal right to an unobstructed street for the full width thereof, and prohibiting its obstruction so as to materially injure its use as a highway, or injure abutting property on either side, without compensation for the damages thereby caused, does not vest any interest or estate in the land in an abutting owner not possessed by him before, but gives to such owner, in case of a taking of part of the street for

Kuhl vs. The Chicago & Northwestern R. Co.

railway purposes, the right to recover consequential damages accruing thereby to his land.

3. The construction of a railroad in a street by the consent of an abutting owner of property, either expressly given or by not objecting, gives the abutting owner an immediate right of action for the damages caused to his land abutting on the street, without reference to the side on which the railroad track may be placed, and the statute of limitations immediately commences running against such claim.

4. If a railroad be constructed across, or in front of, the land of another without objection on his part, he is deemed to have relinquished all rights of property affected thereby, and accepted in lieu thereof the constitutional or statutory right to compensation for the lands taken and the damages to lands not taken allowed by law, with the remedy provided by statute for determining the amount of such compensation or damages, and the recovery thereof. The claim for compensation is a mere chose in action, assignable and enforceable in all respects as any other thing in action, and independent of the subsequent ownership of the land. It does not constitute a right in land, but a right to recover the value of the land surrendered for public use, or damages accruing thereby to lands not taken, which are recoverable by law.

5. Whether the claim be for lands taken or damages to lands not taken, subd. 3, sec. 4222, Stats. 1898, limiting the commencement of actions to six years, applies; and where the damages recoverable are dependent wholly on the statute, as in case of damages to lands abutting on a street, no part of which lands are taken, subd. 4 of such section applies.

6. If a railroad corporation constructs its line of road without making compensation for lands taken therefor, and subsequently conveys its property to another railroad corporation without such other assuming and agreeing to pay the liability of the vendor corporation for the taking of such land, the statute of limitations runs on the claim from the time of such taking. But if the vendee assumes and agrees to pay the liabilities of the vendor, that constitutes a new obligation for the benefit of the claimant for compensation, and the statute of limitations runs on such obligation from the time of the agreement between the vendor and vendee.

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for Manitowoc county: N. S. GILSON, Circuit Judge. *Affirmed.*

Proceedings under the statute, to obtain damages to property on one side of a public street, growing out of the location, construction, and maintenance of a railroad track on the other side of such street. In 1890 the Milwaukee, Lake Shore & Western Railway Company, a duly organized railway corporation, pursuant to authority duly granted by the city of Manitowoc, laid out, established, and constructed, and thereafter maintained continuously till August 19, 1893, a railroad on the opposite side of a street in said city from that on which plaintiff's property was located. On the day last named, said corporation conveyed its property to the *Chicago & Northwestern Railway Company*, the grantee as a part of the consideration assuming and agreeing to pay the liabilities of the grantor. The last-named company maintained and operated the road continuously up to the commencement of these proceedings, and claims the right to continue to do so permanently. Plaintiff was never compensated for the injury to his property growing out of the construction of the road, nor had any proceedings been instituted by either party to have the damages appraised before this suit was commenced, nor did plaintiff ever waive his right to such damages.

The petition of the plaintiff for the appointment of commissioners was regular in form. The defendant answered the petition, pleading, among other things, sec. 4222, R. S. 1878, as a bar to any right on plaintiff's part, on the ground that liability to compensate him for the damages claimed accrued more than six years before the filing of the petition. The issue was determined by the court and resulted in an order as prayed for, in which were findings of fact in accordance with the foregoing, and further that the establishment of the railroad constituted a taking of lands of abutting owners on both sides of the street, and that plaintiff was entitled to have compensation for the injury done to his land and to have commissioners appointed to appraise

and ascertain the same, and also the damages of all other lot owners similarly situated. Due exceptions were taken to the findings. The appeal is from the order.

For the appellant there was a brief by *Fish, Cary, Upham & Black*, and oral argument by *John T. Fish*.

For the respondent there were separate briefs by *Michael Kirwan* and *G. G. Sedgwick*, and oral argument by *Mr. A. J. Schmitz, Mr. Kirwan*, and *Mr. Sedgwick*.

MARSHALL, J. The questions discussed by counsel for the respective parties, and otherwise raised on this appeal, are as follows: (1) What property right, if any, is given by ch. 255, Laws of 1889, to the owner of lands abutting on a public street or highway, which can be enforced against a railway company by reason of the construction and maintenance of its line of road on the opposite side of the street? (2) When does the liability accrue to the lot owner by the circumstances indicated in the first proposition? (3) What provision of the statute of limitations applies as regards the enforcement of such liability? (4) Did the defendant properly plead the statute of limitations in this case? (5) When did the statute commence to run as to the defendant?

The appeal might properly be disposed of without deciding any of the propositions named except the last, or, for the purposes of the appeal, they might be considered unfavorably to the appellant; but as they are presented for decision and are properly in the case from one view of it, and their decision seems to be required in order to clear up some previous conflicts on the subject and to settle firmly and plainly the law under existing statutes, we have concluded to meet and decide each of the propositions suggested.

1. It is insisted by the learned counsel for appellant that the owner of real estate on one side of a street has no interest in the lands on the other; that is, has no property right in the land itself; that in taking the land on one side

of a street for railway purposes, there is no taking of an interest in land incident to the ownership of land on the other, but a mere interference with a right, causing consequential damages to the latter property, which are recoverable.

Independent of some statute on the subject, mere consequential damages caused to one tract of land by the taking of another, or some part of it, for public purposes are not recoverable. Such damages are not property within the constitutional guaranty of security against the taking of property for public use without compensation. True, there are some rights in, or appurtenant to, land, which may be impaired or taken away by the use made of land adjoining, which are subjects of protection by the rules of the common law, and such impairment or taking is an appropriation of property within the meaning of the constitution. But aside from that the only taking in a constitutional sense is a physical appropriation of the thing itself. Damages caused to property, no part of which is taken, are merely consequential and *damnum absque injuria*, in the absence of legislation imposing the obligation to indemnify therefor as a condition of the right to exercise the sovereignty of the state for the purposes of acquiring property for public use. So, prior to the statute on which respondent relies, the lawful construction of a railroad in a public street, on one side of it, in such a manner as not to interfere with the right of access to and from property on the other side, though resulting in serious injury to its beneficial use, caused no liability to the taker to compensate therefor. It did not take or appropriate any property or right of property in the land not physically taken or encroached upon for which an action would lie, hence did not take property in a constitutional sense. Consequential injury to the property of one, that arises from the reasonable use of property of another, is irremediable, because it is an injury without wrong. It would not be actionable

if caused by a private individual, and the situation is not changed if the actor be a private corporation, proceeding lawfully.

It is a mistake to speak of a right appurtenant to land and merely incidental to ownership, which is the subject of statutory protection against interference by the use to which adjoining land may be put, as an easement or property right in such adjoining land. It is a mere right to be protected against unreasonable use of the adjoining land. An invasion of that right is not the appropriation of an estate in such adjoining land, belonging to the owner of lands affected injuriously by the unreasonable use of the former, but is an interference with and total or partial appropriation of the latter. *Fowler v. D. M. & K. C. R. Co.* 91 Iowa, 533.

In the light of the foregoing we turn to ch. 255, Laws of 1889. That part essential to be considered reads as follows: "Owners of any real estate abutting on any highway, street or alley . . . shall have a common right in the free and unobstructed use of such highway, street or alley to the extent of its full width, and no . . . corporation shall close up or obstruct any such highway, street or alley, or any part thereof, so as to materially interfere with its usefulness as a highway, or so as to injure or damage property abutting thereon on either side, . . . without due compensation being made for any damage resulting therefrom to the owners of any property upon both sides of the part of such highway, street or alley so closed up, used or obstructed." "All rights, property and easements, the owners of which would be entitled to damages under the foregoing, may be condemned and permanently appropriated by any corporation legally authorized to use or obstruct any such highway, street or alley, in the same manner that other property may be condemned and taken by such corporation pursuant to its charter or to the general laws of this state in relation to condemnation and taking of land by railroad companies."

We shall take no time to discuss the proposition that the legislature cannot, by its mere fiat, give to one landowner a private right of property in the land of his neighbor. It could no more confer an estate in land upon the one than take it from the other. Either would be beyond its constitutional authority. If it were necessary to construe the statute as an attempt to do that, to that extent it would be unconstitutional and void. But such necessity does not exist. An act of the legislature is to be so construed as to be constitutional in all its parts if reasonably possible to do so. The legislative idea intended to be conveyed by a statute must control if that end can be reached without doing violence to the language used. *Attorney General v. Eau Claire*, 37 Wis. 400; *Howard v. Mansfield*, 30 Wis. 75. In case of doubt as to the meaning of words, the surrounding circumstances, the evils to be remedied, and the objects to be obtained by the law, must be considered in determining where the truth lies. *Clark v. Janesville*, 10 Wis. 136. The language of the act in question is not so clear that the foregoing rules for judicial construction have no room to operate. It undertakes to confer upon opposite abutting owners a right in common throughout the whole width of the highway to have the same kept open and unobstructed. The only reasonable construction of that is that the legislature intended that the owner of land on one side of a street shall have a right equally with the owners on the other, to the benefit to his land of an unobstructed street; not that he shall have a right of property in the land itself included within the street, which he would not have independent of the statute. Therefore, the provision whereby that right may be extinguished upon paying compensation therefor, clearly was intended to give a remedy for the incidental damages to abutting land, no part of which is taken, and which before were not recoverable. That the value of land abutting on one side of a street may be seriously impaired by the

construction of a railroad on the other, and yet the access
to or from such land be not impaired, is well known. The
mischief and injustice of allowing a private corporation to
lay down its tracks in the public streets and escape all lia-
bility for damages to the lands of abutting owners, except
on one side, by merely locating the road so as not to over-
lap the center of the street, was made manifest in a great
many cases, and the result was the act under consideration,
to remedy the evil. It does not confer, or attempt to con-
fer, a right to compensation for land or an interest in land
taken. That did not require any statute. It existed as a
right without any statute, and without the constitution. The
constitution simply guarantees it.

True, the words "rights, property and easements," the
owner of which would be entitled to damages under the act,
"may be condemned and appropriated," etc., are significant,
but only of the loose way words are often used in legislative
enactments. The language was wisely corrected in the Re-
vision of 1898 [sec. 1296a], by substituting the words "right
of property." The only thing with which the statute dealt
was the right of the abutting owner to an unobstructed
street in front of his premises. That was not an estate in the
street, carved out of the ownership of one side and conferred
upon the landowner on the other, and in that sense a right
of property; but a right to the incidental benefit to land on
one side of the street, flowing from the existence of an open
street throughout its whole width.

2. The next step, on the theory upon which the cause was
presented here, leading up to the question of how the action
is affected by the statute of limitations, is to determine when
the right of plaintiff to recover for the injury to his land
became complete. Little need be said on that point. Plaint-
iff's right to an unobstructed street was appropriated for
railroad purposes in 1890, and more than six years before
these proceedings were commenced. By a familiar rule on

the subject, as soon as the right was appropriated, the lia-
bility of the railroad corporation to compensate plaintiff for
consequential damages resulting to his property became
fixed, and the statute of limitations, whatever it may be,
commenced to run.    The construction of the railroad hav-
ing been permitted by the landowner without compensation
or objection, the presumption of law is that he consented
thereto, relying wholly on the liability of the corporation
to respond in damages. ` *Frey v. D., S. S. & A. R. Co.* 91
Wis. 309, and cases there cited.   That presumption carried
with it, in legal effect, a waiver of all remedies for the
wrongful taking, either in law or equity.   The assent waived
the tortious taking, if there were such, and an obligation in
the nature of an implied contract between the parties arose
from the situation, on the one part to pay the legal damages
caused to plaintiff's land by the construction of the road,
and on the other to accept the same in full for the perma-
nent right to maintain such road as regards its effects upon
plaintiff's lands,— a mere *chose in action* in its nature, as
said by the supreme court of Indiana.   *Harshbarger v. Mid-
land R. Co.* 131 Ind. 177.   It is a mere claim to compensa-
tion enforceable independent of subsequent ownership of
the land.   It is assignable and transferable the same as any
other thing in action. *Frey v. D., S. S. & A. R. Co., supra.*

3. So it follows that the liability sought to be enforced,
at least as it existed prior to the purchase of the railroad by
defendant, was solely created by statute and has all the ele-
ments of an implied contract.   Subd. 3 or 4, or both, of sec.
4222, Stats. 1898, apply unless the situation be otherwise by
reason of some new liability incurred by the defendant.
That will be hereafter considered.   The limitation statutes
referred to cover, first, an action upon any contract, obliga-
tion, or liability, express or implied, with some exceptions
not applicable to this case; second, an action upon a liabil-
ity created by statute, other than a penalty or forfeiture,

when a different limitation is not prescribed by law. It will be conceded without discussion that the claim does not come within any of the exceptions to the last provision. It is clearly, as stated, a liability created by statute; at the same time it has all the elements of an obligation resting on implied contract, and that would be so if there were an actual taking of property instead of the mere invasion of a right or privilege,— the waiver of the tort and acceptance of the constitutional liability to pay for the property taken, with the statutory remedy for the appraisal and recovery thereof, and the conduct of the party liable to make compensation, constituting a sufficient meeting of minds by implication to satisfy all the essential elements of an implied contract.

The foregoing is in accord with *Hooe v. C., M. & St. P. R. Co.* 98 Wis. 302, decided by this court January 11, 1898, opinion by Mr. Justice NEWMAN, referring for authority as to the nature of the claim, to *Frey v. D., S. S. & A. R. Co.* 91 Wis. 309. It is in conflict with *Tucker v. C., St. P., M. & O. R. Co.* 91 Wis. 576, decided December 17, 1895, wherein *Frey v. D., S. S. & A. R. Co.* was also referred to as authority. That the court reached a wrong conclusion in the *Tucker Case* we are well satisfied. It is fortunate that the error was corrected before sufficient time had elapsed for the erroneous ruling to become a rule of property or to prejudice materially the rights of parties. It was not intended in *Frey v. D., S. S. & A. R. Co.* to hold that the right to compensation for land taken for railway purposes, no compensation having been made prior to such taking, is an interest in the land taken and in that sense a property right. The language of the opinion to the effect that the right to have the damages assessed and to enforce payment thereof is a property right, referred merely to the right to recover the damages, and to the remedy therefor resorted to in that action. The court said that was a property right separate

and distinct from the title to, or the right of possession of, the land itself. The language, rightly understood, shows clearly that it was not intended to hold that the mere claim for compensation was a right or interest in the land, but exactly the contrary. So the court plainly erred in the decision in the *Tucker Case*, testing it by the *Frey Case*, which it affects to follow. The *Hooe Case*, on the contrary, followed what was really decided in the *Frey Case*, and the conclusion there reached is here, after a full reconsideration of the subject, affirmed. If the law has heretofore appeared to be in a state of uncertainty, it may now be considered at rest.

We shall not endeavor to harmonize the rule above indicated with all of the numerous decisions elsewhere. There is too much conflict to leave room for any reasonable expectation of success if the attempt were made; but it is believed that the better reasoning by far, and the weight of authority, are in favor of the conclusion here reached.

In Pennsylvania the early rule was that proceedings for compensation for property taken for public use and not previously paid for were, in effect, to recover damages for a trespass to lands, and that the statute of limitations on that subject applied. *Forster v. C. V. R. Co.* 23 Pa. St. 371. In *Delaware, L. & W. R. Co. v. Burson*, 61 Pa. St. 369, that was overruled and it was held that the statute of limitations covered only suits and actions at common law; that statutory proceedings to condemn land for public use, or appraise and recover damages for lands taken for public use, did not constitute a suit or action; that though common-law forms are used to some extent, the proceedings were wholly statutory, and, in the absence of a special statute expressly applicable thereto, they were without limitation as to the time within which they might be commenced. That was affirmed in *Keller v. H. & P. R. Co.* 151 Pa. St. 67. The reasoning of the court does not meet with our approval. In *Kohl v.*

*U. S.* 91 U. S. 367, the federal supreme court held that such proceedings are, to all intents and purposes, a suit at common law.   Our statutes expressly provide that the filing of the petition shall constitute the commencement of a suit in court, and that on filing the notice of appeal the proceedings shall be considered an action pending in court.   A suit is a proceeding in court according to the forms of law to enforce the remedy to which a party deems himself entitled. It includes an action, strictly so called (2 Bouv. Dict. 558), and is an action in every respect as regards the running of the statute of limitations.

In *Clark v. Comm'rs of Amsterdam,* 148 N. Y. 1, the proceedings were instituted by the landowner to recover compensation for a portion of his premises taken for public use. More than six years having elapsed since the taking, it was insisted that the limitation statute upon actions to enforce a statutory liability and upon actions to recover for injuries to real property applied.   The court held it was neither an action to enforce a statutory liability nor to recover damages to real property, but was an action to enforce a constitutional right to compensation for property taken.   That is all there is of that case.   In *Kendall v. M. & C. R. R. Co.* 55 Vt. 438, the company took possession of the land and occupied it continuously without compensating the owner. It was insisted that the statute limiting actions for trespass to real estate applied.   The court held that there was a continuing trespass, hence time had not run on the claim therefor.   *Pappenheim v. Metropolitan E. R. Co.* 128 N. Y. 436, and *Hughes v. Metropolitan E. R. Co.* 130 N. Y. 14, proceeded on the same theory.   They are not authority upon which respondent can rely here, nor are any of the numerous cases cited to the point that a continuing nuisance or trespass entitles the owner of the property injured to successive rights of action.   Under the settled rule in this state, as before indicated, consent to the occupancy by

the railway company irrevocably waives the tortious entry.
The subsequent possession is rightful, subject only to the
payment for the property taken and such damages to prop-
erty not taken as may be rightfully claimed under the stat-
ute on the subject.

Many more authorities might be cited where the continu-
ous trespass theory prevails, but we have proceeded far
enough on that line to show that they are contrary to the
law as understood and enforced by this court. As soon as
it is comprehended that when the landowner permits, either
expressly or by not objecting, a railway corporation to
enter and construct its road, he is conclusively presumed to
have irrevocably surrendered the thing appropriated and
waived the tortious taking in consideration of the right to
claim full compensation for the property appropriated, it
will be readily seen that the many cases which proceed on
the trespass and continuous trespass and continuous nui-
sance theory are not applicable. The very foundation upon
which they rest is wanting where the rule prevails and is
carried to its natural result, that appropriation by consent,
express or implied, is a relinquishment of the right of prop-
erty in the thing taken. A proceeding thereafter instituted
to recover its value is not an action for a trespass or the
substitute for such an action. That was the conclusion
reached by the supreme court of Indiana in *Shortle v. L., N.
A. & C. R. Co.* 130 Ind. 505, where the situation of the
parties, after appropriation of the land for railroad purposes
without objection is held to be the same as here. The In-
diana court also reached the conclusion that the general
statute of limitations of that state, applicable to actions not
covered by some specific provision, applied. Substantially
to the same effect are *Chicago & E. I. R. Co. v. McAuley,*
121 Ill. 160; *Pratt v. D. M. N. W. R. Co.* 72 Iowa, 249;
*Frankle v. Jackson,* 30 Fed. Rep. 398; *Fowler v. D. M. &
K. C. R. Co.* 91 Iowa, 533; and *Lyles v. T. & N. O. R. Co.*

73 Tex. 95. The five-years statute of limitations was applied in each of the cases mentioned.

4. The foregoing makes it unnecessary, in any view of the case, to consider the point raised that no part of sec. 4222, R. S. 1878, was properly pleaded except subd. 4, relating to liabilities created by statute, as we have seen that the claim in suit is of that character. But it is considered that the whole section was properly pleaded. The language of the answer to the effect that the defendant pleads the statute of limitations, namely, section 4222 of the Revised Statutes of Wisconsin, in bar of any right on the part of the petitioner to recover in the proceedings, and gives notice that such statute will be insisted and relied upon on the hearing, was sufficient to entitle the defendant to the advantage of any subdivision of the section applicable to the facts set forth in the pleadings on either side of the controversy. *Orton v. Noonan,* 25 Wis. 672; *Ruggles v. Fond du Lac Co.* 63 Wis. 205; *Meade v. Gilfoyle,* 64 Wis. 18; *Haseltine v. Simpson,* 58 Wis. 579.

5. The foregoing disposes of all the questions argued in the briefs of counsel or suggested on the oral argument. If we were permitted to stop at this point, the result would be a reversal of the judgment, but there is another important element in the case that must be considered. This proceeding is not against the corporation that appropriated the street and caused the damages to plaintiff's property. The railroad having been established by authority of the city, it became a permanent structure, and the entire damages to plaintiff's land recoverable as soon as the track was laid. No subsequent purchaser of the land could claim the damages, or any damages thereto, and no mere transfer of the railroad to another corporation and possession by it constituted a new taking or a new cause of action for damages, or interrupted the running of the statute of limitations on the original claim. The doctrine of continuing trespass or continuing nuisance,

in any view, has no application to such a situation. That is very fully treated in *Fowler v. D. M. & K. C. R. Co.* 91 Iowa, 533, and *Chicago & E. I. R. Co. v. McAuley*, 121 Ill. 160, above cited. In the latter case the railroad was constructed in the street by proper municipal authority. A statutory right to consequential damages existed as in this case, but no proceedings were taken by the corporation to have such damages appraised. After the lapse of three years the road passed into the hands of a receiver. Some three years thereafter it was sold to the defendant, and it continued to operate the road up to the time of the commencement of proceedings by the lot owner to recover his damages caused by the construction and maintenance of the road. The defendant pleaded the five-years statute of limitations, barring actions to recover for injuries to property and all other actions of that nature not otherwise specifically limited. The plaintiff contended for the continuous trespass theory, but the court held that, the structure being permanent, the entire damage, past, present, and future, became fixed and determinable immediately upon the construction of the road, and the corporation that did the act became liable therefor, and that the five-years statute of limitations applied; that the sale of the road did not change the situation — it did not interrupt the running of the statute or create a new or independent liability. *Lyles v. T. & N. O. R. Co.* 73 Tex. 95, is to the same effect.

If appellant were merely the successor of the Lake Shore road, the statute of limitations applicable to the claim in suit would not be affected by the change in ownership of the road; but the assumption of and agreement to pay the liabilities of the old company changes the situation. That made a new contract, and lets in the rule that if one, for a valuable consideration, makes a promise to another for the benefit of a third person, such third person may maintain an action in his own name upon the promise, no matter from whence moved the consideration to sustain the promise.

*Putney v. Farnham,* 27 Wis. 187; *Bishop v. Douglass,* 25 Wis. 696; *Bassett v. Hughes,* 43 Wis. 319; *Hoile v. Bailey,* 58 Wis. 434; *Grant v. Diebold S. & L. Co.* 77 Wis. 72; *Enos v. Sanger,* 96 Wis. 150. The rule as stated by Mr. Justice BIGELOW in *Brewer v. Dyer,* 7 Cush. 337, is often cited in the books as a most clear statement of the law and the reason of it. In substance it is as follows: ' The principle of law long recognized and clearly established is that where one person, for a valuable consideration, engages with another to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such agreement. It does not rest upon the ground of any actual or supposed relationship between the parties, as some of the earlier cases seem to indicate, but on a broad and more satisfactory basis that the law, operating upon the acts of the parties, creates the debt, establishes the privity, and implies the promise of an obligation upon which the action is founded.' The second promisor, in carrying out his promise, pays the debt to his promisee by paying the latter's to the third person, using the means therefor expressly appropriated to that end and left in his hands for that purpose. Out of the situation a new and independent obligation springs, which may be enforced after the statute of limitations has run upon the old obligation. They have no necessary dependence upon each other. The original obligation may have been without consideration, or tainted with usury, or not recoverable upon either of many grounds that might be mentioned, without in any way affecting the obligation to pay the third person, growing out of the new contract. *Martin v. Fox & Wis. Imp. Co.* 19 Wis. 552; *Bishop v. Douglass,* 25 Wis. 696. In *Robertson v. Stuhlmiller,* 93 Iowa, 326, the debt was past due when assumed, but the court held that the assumption and agreement to pay was an original promise and new contract upon which the running of the statute of limitations upon the original obligation

Kuhl vs. The Chicago & Northwestern R. Co.

was immaterial; that the statute ran upon the new and independent undertaking from the time the liability of the promisor, under such undertaking, accrued.

The principle above discussed appears to apply to the situation of the parties to this case beyond reasonable controversy. The petition alleges that the defendant purchased the railroad of the Lake Shore Company, August 19, 1893, and, as a part of the consideration therefor, assumed and agreed to pay all of the existing debts, liabilities, and obligations of the latter company. That was found as a fact in the order appealed from. The obligation to compensate plaintiff for the damages to his property was a liability of the vendor, and one of those which the defendant assumed and agreed to pay. That promise, and the consideration for it, constitute a new and original contract for the benefit of the plaintiff, which he had a right to enforce by direct proceedings, and which could not thereafter be affected by the completion of the period for recovery of damages against the Lake Shore Company. We see no escape from that conclusion and no reason why the special proceedings to determine the amount of the liability to plaintiff are not only proper but exclusive, the same as if the recovery were sought of the party originally liable. This leads to an affirmance of the order, as the assumption of liability by the defendant was less than four years old when the proceedings were commenced.

*By the Court.*— The order is affirmed.