VERBECK, Appellant, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Respondent.

*November 17—December 8, 1914.*

*Railroads: Construction and maintenance: Obstructing stream: Flooding lands: Remedies: Condemnation: Recurring nuisance: Limitation of actions: Evidence: Liability of lessee of railroad: Damages.*

1.  Where, by reason of the faulty construction and maintenance of a railroad, a stream crossed thereby is so dammed up as to flow back upon and injure the adjoining land, the remedy of the land-

owner is not limited by sec. 1836, Stats., to a proceeding for condemnation; nor, where none of the land so flooded has been taken or used for right-of-way purposes, is sec. 1852, Stats., relating to condemnation, applicable to the situation.

2. The landowner's right of action in such case does not arise from the lawful construction of the railroad where located, but from the failure to restore the stream to its former state or keep its usefulness unimpaired when the railroad was constructed and afterwards; and an action by him for damages by reason of a recurrent nuisance occasioned by such improper construction and maintenance of the railroad is not barred at the expiration of six years from the time of such construction. *Kuhl v. C. & N. W. R. Co.* 101 Wis. 42, distinguished.

3. Evidence in such an action that defendant had operated the railroad since April, 1909; that it maintained station agents and section crews that repaired the track; that complaints were frequently made to it about the flooding; that it made no objection on the ground that it was not the party liable; and that in 1912 it remedied the trouble by putting in a culvert which took care of the water, shows a *prima facie* liability on the part of the defendant, though a mere lessee, for the damages accruing since the date first named, when it took possession of the road.

4. Evidence in such action that eight or nine acres of plaintiff's land were rendered untillable by reason of the flooding and that the rental value per acre in ten-acre lots was $10 to $12, was sufficient to show substantial damage, and a nonsuit was improper.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

Action to recover damages for flowage of plaintiff's land. The material allegations of the complaint are these: Plaintiff is and since July 1, 1898, has been the owner of a certain eighty-acre tract of land adjoining defendant's right of way on the south. The land slopes to the north and a natural stream of water flows through it in a northeasterly direction. Prior to 1875 the defendant constructed a railroad track on an embankment along the northern side of his premises and crossing the stream. The embankment and track were improperly and negligently constructed in that no suitable or proper provisions were made therein for the passage of the stream of water in its natural course, by reason of which it became

dammed up and was caused to flow back upon and overflow about fifteen acres of plaintiff's land adjacent to the right of way. Such flooding has continued until a short time prior to the commencement of this action, and has existed during all seasons of the year, rendering the land marshy, muddy, and unfit for cultivation. In times of high water a much larger portion of plaintiff's land is flowed. Damages in the sum of $1,000 are asked.

The answer was a general denial, and a plea of the six years' statute of limitations. At the close of plaintiff's testimony the court granted a motion for a nonsuit. From a judgment entered accordingly the plaintiff appealed.

For the appellant there was a brief by *Somers & Velte,* and oral argument by *L. J. Somers.*

For the respondent there was a brief by *W. A. Hayes* and *Bouck & Hilton,* and oral argument by *Mr. Hayes.*

VINJE, J. The testimony relating to the flooding was very brief and was given by the plaintiff himself. He stated that he had owned the farm since 1898. In 1909 the railroad embankment contained a culvert at the northeast corner and a bridge at the northwest corner of the farm. Prior to 1909 the culvert and bridge did not take care of the flowage of the watercourse. There was a severe flood in May, 1909, and his man complained and plaintiff called up the agent of the Soo road at Neenah and asked him to send up section men. Between 1909 and the summer of 1912 he called up the station agent at least ten or twelve times. He also spoke to the section foreman during 1910 or 1911 while floods were on. The floods came irregularly. At times the brook flows in a regular manner and fish can be found therein. The course of the stream is the natural course for a whole section of the county, and when there is a flood the brook fills up and is then about five rods wide. During the dry season the lakes get low. These floods are periodical, sometimes two in a year,

sometimes three in a year, and in the year 1911–1912 the land was flooded nine times. The land is not covered with water all the time; a good part of the time the land is clear. Since May, 1909, from twelve to fifteen acres of the plaintiff's land has been under water. About eight or nine acres of this land was untillable on account of the water, but he could rent none of the twenty-acre tract. In ten-acre quantities land would rent for $10 or $12 an acre. In 1912 an additional culvert was put in by the defendant road and since then there has been no damage to plaintiff's land on account of flowage.

Defendant claims that the provisions of secs. 1836 and 1852, Stats. 1913, apply, and that plaintiff's only remedy was one for condemnation. The latter part of sec. 1836, reading "and all provisions of these statutes for acquiring land by right of eminent domain and making compensation therefor shall apply in assessing damages for such closing and for injury to lands thereon," is relied upon as limiting the remedy to a condemnation proceeding. It is quite evident upon reading the whole section that the part quoted refers to a situation where sloughs or bayous of a navigable river are closed by the construction of a railroad and so does not apply to the facts in this case. Neither does sec. 1852 cover the situation. That deals only with lands upon which the track, roadbed, or any part thereof is constructed, and provides for condemnation thereof. The land flooded is outside the right of way and none of it has been taken for right-of-way purposes. At best it can only be claimed that by reason of faulty construction and maintenance of the track and roadbed plaintiff's land has been flooded. It has not been nor is it needed for the maintenance of the track, as is shown by a description of the situation of the track with reference to the land and stream as well as from the fact that since another culvert was put in there has been no flooding.

The case of *Kuhl v. C. & N. W. R. Co.* 101 Wis. 42, 77 N. W. 155, relied upon by the defendant, presented quite a

different situation. There damages were sought to be recovered by an owner of property abutting upon a street for the construction of a railroad along the street, and it was held that sub. 3, sec. 4222, limiting the commencement of actions to six years, applied, though the railroad constructed was located on the further side of the street from plaintiff's land. The right of action was given by ch.. 255, Laws of 1889, and the damages grew out of the lawful construction of the railroad, and the right of action was held to accrue when the road was constructed. Here the damages did not arise out of the lawful construction of the railroad, but out of defendant's failure to comply with the statutory requirement to restore a stream to its former state or to keep its usefulness unimpaired when it constructed its railroad and afterwards. The action here is for damages by reason of a recurrent nuisance occasioned by an improper construction and maintenance of a railroad track, and not for damages growing out of its construction where located.

No title to the flooded lands is claimed by adverse user, so that question need not be considered. The proof showed that the defendant began to operate the railroad in April, 1909; that it maintained station agents, and section crews that repaired the track; that complaints were frequently made to it about the flooding; that it made no objection on the ground that it was not the party liable; and that in 1912 it remedied the trouble by putting in a culvert that took care of the water. Such proof showed *prima facie* liability on the part of the defendant though a mere lessee. *Slight v. Gutzlaff,* 35 Wis. 675; *Arpin v. Bowman,* 83 Wis. 54, 53 N. W. 151. The proof showed intermittent or recurring nuisances, each one of which constituted a new cause of action. *Ramsdale v. Foote,* 55 Wis. 557, 13 N. W. 557; *Kimberly-Clark Co. v. Patten P. Co.* 153 Wis. 69, 84 (140 N. W. 1066) and cases cited. The action was begun August 18, 1913, and damages accruing within six years of that date would be recoverable against the

56 SUPREME COURT OF WISCONSIN. [Dec.

Lutheran T. Cong. v. St. Paul's Eng. E. L. Cong. 159 Wis. 56.

defendant but for the fact that it was not in possession of the road prior to April, 1909, so damages accruing only since the latter date can be recovered.

The proof on the subject of damages was quite meager and indefinite. But it did show that eight or nine acres were rendered untillable by reason of the flooding and that the rental value per acre in ten-acre lots was from $10 to $12 per acre. This proof showed some substantial damage and the nonsuit was erroneously granted.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.