COLUMBIA PROPANE, L.P., a Limited Partnership,
Plaintiff-Appellant,

v.

WISCONSIN GAS COMPANY, a Wisconsin Corporation,
Defendant-Respondent,†

ABC INSURANCE Co., a corporation or other entity,
and DEF Insurance Co., a corporation or other
entity, Defendants.

Court of Appeals

*No. 01–0090. Submitted on briefs August 7, 2001.—Decided
December 28, 2001.*

2002 WI App 9

(Also reported in 640 N.W.2d 819.)

† Petition to review granted 4-22-02.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael Ash, Michael B. Apfeld*, and *John L. Clancy* of *Godfrey & Kahn, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Charles P. Graupner, Pamela L. Gergens*, and *Jon G. Furlow*, of *Michael Best & Friedrich LLP*, Milwaukee; *William A. Metcalf*, of counsel, of *Metcalf & Quinn*, Wisconsin Rapids.

Before Vergeront, P.J., Roggensack and Lundsten, JJ.

¶ 1. VERGERONT, P.J. In this action, Columbia Propane, L.P. seeks to hold Wisconsin Gas Company

liable for environmental contamination on real estate now owned by Columbia Propane; the contamination was allegedly caused by People's Gas Company, a prior owner of the real estate. The trial court entered summary judgment in favor of Wisconsin Gas, dismissing Columbia Propane's tort claims and claims for indemnification and subrogation on the ground that Wisconsin Gas did not assume these liabilities of People's Gas by agreement.[1] The court also ruled that Columbia Propane was not a third-party beneficiary of the agreement between People's Gas and Wisconsin Gas and that the contract statute of limitations applied to Columbia Propane's claims.

¶ 2. We conclude that under the plain language of the asset purchase agreement between People's Gas and Wisconsin Gas, Wisconsin Gas did not assume liability for the indemnification and subrogation claims Columbia Propane asserts in its complaint, but that the contract language is ambiguous regarding whether Wisconsin Gas agreed to assume liability for the tort claims. We further conclude that resolution of the ambiguity involves the resolution of disputed issues of fact, making summary judgment inappropriate. Finally, we conclude that since Columbia Propane has alleged that Wisconsin Gas is liable for People's Gas's torts as a successor corporation having agreed to assume that liability, Columbia Propane need not plead and prove that it is a third-party beneficiary and the statute of limitations for actions on a contract does not apply. We therefore affirm summary judgment in part, reverse in part, and remand.

---

[1] At the time of the agreement with People's Gas, Wisconsin Gas was known as Milwaukee Gas Light Company, but we will use the name "Wisconsin Gas" throughout this opinion.

¶ 3. Columbia Propane also contends the trial court erroneously exercised its discretion in denying its motion to amend the complaint after the court granted summary judgment. We reverse that decision insofar as the court did not permit Columbia Propane to add allegations of constructive fraud and we direct the court on remand to reconsider the motion to add those allegations in light of this opinion.

## BACKGROUND

¶ 4. Columbia Propane's complaint alleged as follows. People's Gas, now defunct, had operated a coal gas plant from 1920 to 1959 on the southern portion of People's Gas's real estate, and that operation had contaminated the soil and groundwater on the southern portion prior to 1960. In 1958, Columbia Propane[2] purchased the northern portion of the real estate from People's Gas. The contaminants from the southern portion entered the soil and groundwater of the northern portion, and some or all of this contamination occurred before 1960. In 1960, Wisconsin Gas acquired the southern portion of the real estate from People's Gas under an asset purchase agreement.[3] In 1962, Columbia Propane purchased the southern portion of the real estate from Wisconsin Gas, with the result that

---

[2] Columbia Propane was formerly known as National Propane, L.P., and is the successor in interest to National Propane Corporation. National Propane has assigned its claims relevant to this action to Columbia Propane. In this opinion we will not distinguish between National Propane and Columbia Propane, but will refer to both as "Columbia Propane."

[3] Based on comments made by Columbia Propane's counsel in the trial court, it appears Columbia Propane concedes there is no evidence that People's Gas knew of the contamination at the time of the transaction with Wisconsin Gas.

since 1962 Columbia Propane has been the owner of the entire parcel of real estate.[4]

¶ 5. The State of Wisconsin brought an action against Columbia Propane for the contamination caused by People's Gas. Columbia Propane seeks reimbursement from Wisconsin Gas for the sums it has expended for remediation, as well as other damages allegedly caused by the contamination, because, it alleges, Wisconsin Gas assumed all liabilities of People's Gas under the 1960 asset purchase agreement.[5] Columbia Propane asserts claims of nuisance, trespass, negligence, strict liability, subrogation, indemnification, and contribution. Columbia Propane also requests a declaration of rights and obligations under the 1960 asset purchase agreement.

¶ 6. Wisconsin Gas moved for summary judgment. It contended that it was not liable to Columbia Propane under the asset purchase agreement for several independent reasons: (1) the language of the agreement plainly provided that Wisconsin Gas assumed liability only for "then outstanding" liabilities and that did not include liability for contamination which was then unknown; (2) Columbia Propane was not a third-party beneficiary of the asset purchase agreement; and (3) all claims that were based on Wisconsin Gas's liability under the agreement were

---

[4] Columbia Propane purchased the real estate, certain fixtures, and personal property from Wisconsin Gas, but did not assume any liabilities of Wisconsin Gas.

[5] Columbia Propane also alleged that Wisconsin Gas was responsible for the liabilities of People's Gas because Wisconsin Gas continued substantially the same business operations and because the asset purchase amounted to a merger. The trial court ruled against Columbia Propane on these theories of liability and Columbia has not appealed that ruling.

subject to the statute of limitations for contract actions, not for tort actions, and so were time-barred. Columbia Propane opposed the motion, disputing each of Wisconsin Gas's legal contentions and also arguing that if Wisconsin Gas did not assume liability for the contamination under the agreement, then it had engaged in fraud. Columbia Propane asked that a partial summary judgment be granted in its favor, determining that Wisconsin Gas was liable to Columbia Propane for the contamination caused by People's Gas.

¶ 7. The trial court agreed with each of Wisconsin Gas's contentions and granted summary judgment in its favor. In discussing the third-party beneficiary issue, the court observed that the complaint did not plead that Columbia Propane was a third-party beneficiary of the asset purchase agreement, but it decided nonetheless that Columbia Propane was not a third-party beneficiary. The court refused to consider Columbia Propane's argument regarding fraud, because the complaint contained no allegations of fraud.

¶ 8. After the court issued its decision, Columbia Propane moved to amend its complaint to allege breach of contract, third-party beneficiary status, and constructive fraud. The court denied the motion and entered judgment dismissing the complaint. In denying the motion, the court observed that Columbia Propane had pleaded only tort claims and, after losing the summary judgment motion based on that complaint, now wanted to change its entire theory. The court also stated that, even though Columbia Propane had not pleaded a breach of contract or third-party beneficiary status, the court had ruled on these issues because, in the court's view, the agreement was "what everything was all about." Therefore, the court concluded, there was no point in an amendment to the complaint in

those respects. As for the constructive fraud allegations, the court rejected Columbia Propane's argument that it had not learned of the basis for these allegations until after Wisconsin Gas had filed its motion for summary judgment, when it discovered Public Service Commission (PSC) records indicating that Wisconsin Gas had represented to the PSC that it would be assuming all the obligations and liabilities of People's Gas. The court pointed out: (1) that information could have been discovered in the PSC files sooner, and (2) Columbia Propane did not bring a motion to amend as soon as it discovered the files but waited to see how the court decided the summary judgment. The court concluded that it would be unfair to Wisconsin Gas to allow the amendment at that time.

## DISCUSSION

¶ 9. On appeal, Columbia Propane contends that in granting Wisconsin Gas's motion for summary judgment, the court erred in its interpretation of the asset purchase agreement and in its rulings that Columbia Propane had to be a third-party beneficiary of that contract and that the contract statute of limitations applied to its claims. Columbia Propane also asserts that the trial court erroneously exercised its discretion in denying its motion to amend the complaint.

¶ 10. We address first Columbia Propane's challenge to the court's decision granting summary judgment. Our review of that decision is de novo, and we apply the same methodology as that applicable in the trial court. *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48 (Ct. App. 1994). Summary judgment

is appropriate if there are no material disputes of fact and one party is entitled to judgment as a matter of law. *Id.* at 372–73.

*Interpretation of Asset Purchase Agreement*

¶ 11. The complaint alleges various torts committed by People's Gas against Columbia Propane for which, the complaint alleges, Wisconsin Gas is liable because of the asset purchase agreement. The subrogation, indemnification, and contribution claims are also premised on People's Gas's obligations—to third parties—which Columbia Propane has allegedly paid. For these claims, too, the source of Wisconsin Gas's liability is alleged to be the asset purchase agreement. Although a corporation that purchases the assets of another does not necessarily assume liability for the seller's obligations, there are four recognized exceptions to that rule: (1) purchaser corporation expressly or implicitly agrees to assume liability; (2) transaction amounts to a consolidation or merger of purchaser and seller corporations; (3) purchaser corporation is merely a continuation of seller corporation; or (4) transaction is entered into fraudulently to escape liability for such obligations. *Fish v. Amsted Indus. Inc.*, 126 Wis. 2d 293, 298, 376 N.W.2d 820 (1985). Therefore, under the first exception, Wisconsin Gas would be liable to Columbia Propane for claims the latter has against People's Gas if Wisconsin Gas agreed to assume liability for those claims in the asset purchase agreement.

¶ 12. In that agreement, People's Gas agreed to sell to Wisconsin Gas all of its assets

> free and clear of any liability, obligation, imperfection of title, lien or encumbrance except only those referred to

594

in paragraph 4(d)[6] hereof and those liabilities and obligations which are to be assumed by [Wisconsin Gas] at the closing hereinafter provided, and People's Gas agrees to indemnify and save [Wisconsin Gas] harmless with respect to any liability of People's Gas which is not assumed by [Wisconsin Gas] hereunder.

(Footnote added.)

¶ 13. Paragraph (1)(b) provided:

[Wisconsin Gas] hereby agrees, subject to the terms and conditions of this Agreement and in reliance on the representations and warranties herein contained of People's Gas, to purchase the Assets from People's Gas at the date of closing as aforesaid and **to assume all of the then outstanding debts, obligations, contracts and liabilities of** People's Gas, provided that [Wisconsin Gas] shall have no liability with respect to the following: ((1) items as to which provision for cancellation or payment is otherwise made herein; (ii) **any obligations or liabilities incurred by People's Gas after the closing**; (iii) Federal or state income taxes of People's Gas; (iv) any indebtedness or liability to the officers or stockholders of People's Gas; and (v) legal accounting and other fees and expenses incurred by People's Gas in connection with its liquidation and dissolution or in connection with the making or performing of this Agreement or the transactions contemplated hereby.

(Emphasis added.)

¶ 14. Paragraph 4 contained the warranties made by People's Gas and provided in part:

As an inducement to [Wisconsin Gas] to purchase the Assets, People's Gas makes the following represen-

---

[6] The liens, encumbrances, and imperfections of title specified in paragraph 4(d) are not relevant to this appeal.

tations and warranties, and covenants that they shall be true at the time of closing:

. . . .

(c) The balance sheet as of September 30, 1959, Exhibit A hereto, has been prepared in accordance with generally accepted accounting practices, it correctly reflects the Assets, liabilities and financial status of People's Gas as of said date; **People's Gas has no liabilities of any nature, whether accrued, absolute, contingent or otherwise, and whether for taxes, contract or tort claims or otherwise, for which adequate provision has not been made in Exhibit A [the balance sheet] or by insurance**, except unpaid installments of paving assessments in the amount of $1,309.07. There are no actions, suits or proceedings pending or threatened against or affecting People's Gas which are not fully covered by insurance or which would materially adversely affect the financial position or Assets or operations of People's Gas.

(Emphasis added.)

¶ 15. The aim of all contract interpretation is to ascertain the intent of the parties. *Eden Stone Co., Inc. v. Oakfield Stone Co. Inc.*, 166 Wis. 2d 105, 116, 479 N.W.2d 557 (Ct. App. 1991). While construction of a contract to ascertain the intent of the parties is normally a matter of law for this court, *id.* at 115, where a contract is ambiguous, the question of intent is for the trier of fact. *Armstrong v. Colletti*, 88 Wis. 2d 148, 153, 276 N.W.2d 364 (Ct. App. 1979). Whether a contract is ambiguous in the first instance is a question of law which we decide independently of the trial court. *Wausau Underwriters Ins. Co. v. Dane County*, 142 Wis. 2d 315, 322, 417 N.W.2d 914 (Ct. App. 1987). A contract is ambiguous when it is reasonably susceptible to more

than one meaning. *Id.* In interpreting contract language, we consider the entire agreement and attempt to give a reasonable meaning to all parts so that no part is useless or inexplicable. *Lauterbach v. Brown*, 7 Wis. 2d 240, 242, 96 N.W.2d 605 (1959).

¶ 16. The trial court concluded, and Wisconsin Gas argues on appeal, that the phrase "then outstanding . . . liabilities" in paragraph 1(b) plainly means only those liabilities that were unpaid and uncollected at the time of the closing and does not encompass contingent liabilities for unknown contamination. According to Wisconsin Gas, the reference in subparagraph 1(b)(ii) to "any obligations or liabilities incurred . . . after closing" reiterates that point. Wisconsin Gas also refers to the warranty in paragraph 4(c) and argues that the only liabilities Wisconsin Gas assumed were those listed on the balance sheet, attached as Exhibit A to the agreement.[7]

¶ 17. Columbia Propane argues that the phrase "then outstanding . . . liabilities" in paragraph 1(b) plainly refers to all liability for consequences of People's Gas's operations that had occurred prior to closing even though the measure of that liability was not fixed or known at the time of closing. Subparagraph 1(b)(ii),

---

[7] Under "Current Liabilities" on the balance sheet were the following:

| | |
|---|---|
| Notes Payable | $ 4,190.00 |
| Accounts Payable | 3,747.24 |
| Accounts Payable to People's Bottle Gas Co. | 37,164.64 |
| Customers' Deposits | 2,015.90 |
| Accrued General Taxes | 1,341.51 |
| Accrued Interest | 1,481.59 |
| Other | 207.15 |
| | $50,148.03 |

according to Columbia Propane, shows that the assumption of liabilities was that broad because there would otherwise be no need for this exclusion. Alternatively, Columbia Propane argues, if there is an ambiguity, then extrinsic evidence, which it submitted in opposition to the motion, resolves the ambiguity in its favor.

¶ 18. In this case, in considering what liabilities the parties intended that Wisconsin Gas assume, we focus on the specific claims asserted in Columbia Propane's complaint—potential tort claims based on contamination that had already occurred, with neither party knowing of the contamination at the time of the agreement or the closing, and claims for reimbursement for payments made as a result of the action filed by the State of Wisconsin.[8] We address the tort claims first.

¶ 19. The term "liabilities" as used in the assumption provision of paragraph 1(b) is plainly broad enough

---

[8] Because Wisconsin Gas's motion for summary judgment asserted that it had no liability under the asset purchase agreement for any of the claims asserted against People's Gas, it did not address whether the complaint stated claims for relief against People's Gas, and, if so, what claims. Since neither of the parties has briefed that issue, we do not decide it, and, for purposes of this decision, we accept the claims against People's Gas as described in the complaint. However, nothing in this decision is intended to decide whether the complaint adequately states a claim for relief against People's Gas for any particular claim. In this regard, we observe that Columbia Propane as owner of the northern portion may have tort claims against People's Gas for contamination of that portion traveling from the southern portion that occurred between 1958 and 1960; but an entirely different analysis is required to decide what claims, if any, Columbia Propane as owner of the southern portion has against People's Gas.

598

to include liability for tort claims. *See Lenz v. Chicago & N.W. Ry. Co.*, 111 Wis. 198, 203, 86 N.W. 607 (1901) (the terms "obligation" and "liability" are each "broader than 'money debt' in significance"); *see also* BLACK'S LAW DICTIONARY 925 (7th ed. 1999) (giving as the first meaning of liability: "The quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment <liability for injuries caused by negligence>.").[9]

¶ 20. If we were interpreting "outstanding" in relation to "debt," we would agree with the trial court and Wisconsin Gas that the parties meant "unpaid" or "uncollected," and the inference would be very strong, if not the only reasonable inference, that the parties were referring to debts that were known at the time of closing. However, the meaning of "outstanding" with respect to liability for a tort is not clear. Whether a tort has been committed and, if so, the amount of damages, is established in a court action, whereas liability for a debt and the amount owed may be known without any court action. "Unpaid" and "uncollected" make sense with respect to tort liability if there has been a judgment, but the wording of the agreement does not suggest that limitation. An alternative dictionary defi-

---

[9] The second meaning is "[a] financial or pecuniary obligation; DEBT ." BLACK'S LAW DICTIONARY 925 (7th ed. 1999). Although "debt" may be used as a synonym for "liability," because the contract uses both terms, we assume the parties did not intend them to have identical meanings. *Cf. American Motorists Ins. Co. v. R & S Meats, Inc.*, 190 Wis. 2d 196, 214, 526 N.W.2d 791 (Ct. App. 1994) (discussing interpretation of a statute).

nition of "outstanding" seems to make more sense as a modifier for "liability": "continuing in being, unresolved."[10]

¶ 21. Even if we assume that the phrase "outstanding liabilities" when considered in isolation plainly does not include potential tort claims for contamination that has already occurred but is unknown, two other provisions suggest that it may reasonably be read to include such claims: subparagraph 1(b)(ii) and paragraph 4(c). In subparagraph 1(b)(ii), Wisconsin Gas is expressly not assuming liability for "any obligations or liabilities incurred by People's Gas after the closing." "Incurred," as the trial court pointed out, means "become liable or subject to."[11] With respect to tort liability, it is reasonable to interpret subparagraph 1(b)(ii) to exclude from the liabilities that Wisconsin Gas is assuming liability for any torts that People's Gas committed after closing, but not for those that People's Gas committed before closing. If "outstanding . . . liabilities" were intended to include only those liabilities that were known and for which payment was due prior to closing, as Wisconsin Gas suggests, it would not be necessary to exclude liabilities incurred after closing: obviously, they would have been neither known nor payable before closing.

¶ 22. The warranty in paragraph 4(c) is a further indication that the parties may have intended that Wisconsin Gas assume liability for potential tort claims for conduct that had already occurred. People's Gas

[10] "2 a: UNCOLLECTED, UNPAID . . . b: continuing in being: UNRESOLVED . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1604 (unabr. ed. 1993).

[11] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra,* at 1146.

warrants that it has "no liabilities of any nature, whether accrued, absolute, contingent or otherwise, and whether for taxes, contract or tort claims or otherwise, for which adequate provision has not been made in Exhibit A [the balance sheet] or by insurance. . . ." Since the assumption of liabilities in paragraph 1(b) was made "in reliance on the representations and warranties herein," it is appropriate to consider this warranty in interpreting paragraph 1(b). The warranty in paragraph 4(c) is very broad. The "or by insurance" plainly means that People's Gas is not warranting that all liabilities are on the balance sheet; rather, it is warranting that there is insurance coverage for any liabilities that are not on the balance sheet. It is reasonable to infer from this warranty that Wisconsin Gas is assuming liabilities that are not on the balance sheet, and which are not known, while at the same time People's Gas is promising that insurance would cover those liabilities. If insurance does not cover such unknown liabilities, then Wisconsin Gas may have a claim for breach of warranty.

■

¶ 23. We therefore conclude that the asset purchase agreement may be reasonably interpreted to bind Wisconsin Gas to assume liability for torts that People's Gas had committed before closing, but which were unknown at closing, and this includes tort liability for contamination that People's Gas did not know about at the time of closing. The three cases that Wisconsin Gas cites in support of its position that this is not a reasonable interpretation are concerned with liability under CERCLA (Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–9675), not tort liability. *See John S. Boyd Co., Inc. v. Boston Gas Co.,* 992 F.2d 401 (1st Cir. 1993);

*North Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642 (7th Cir. 1998); *Hunt's Generator Comm. v. Babcock & Wilcox Co.*, 863 F. Supp. 879 (E.D. Wis. 1994). This is a significant distinction, as we discuss in more detail below, because CERCLA was enacted in 1980, after the contracts in these cases were formed, whereas long before 1960 Wisconsin courts recognized tort liability for types of soil and water contamination under theories such as nuisance, *Price v. Oakfield Highland Creamery Co.*, 87 Wis. 536, 541–43, 58 N.W. 1039 (1894), and negligence, *Enders v. Sinclair Refining Co.*, 220 Wis. 254, 257–60, 263 N.W. 568 (1935). Moreover, the contract language in each of the three cases differed from that in this case, either using more limiting language in the assumption provision or not containing other provisions that suggested a broader assumption.[12]

---

[12] In *John S. Boyd Co., Inc. v. Boston Gas Co.*, 992 F.2d 401, 407 (1st Cir. 1993), the relevant language in the closing agreement was that the purchaser agreed to assume the liabilities of the seller "as then existing"; the assumption of liabilities document provided that the purchaser would assume all liabilities "outstanding at the date hereof"; and the court referred to no other provision that suggested the assumption of liabilities that were incurred but unknown at the time of closing. In *North Shore Gas Co. v. Salomon, Inc.*, 152 F.3d 642, 652 (7th Cir. 1998), the contract provided the successor company would "assume liabilities and obligations of every kind and character . . . accrued to or existing on the date of transfer" and the court referred to no other provision that suggested the assumption of liabilities that were incurred but unknown at the time of closing. In *Hunt's Generator Committee v. Babcock & Wilcox Co.*, 863 F. Supp. 879, 882 (E.D. Wis. 1994), the purchaser agreed to assume "[a]ll of the debts, obligations and liabilities of Northwestern shown on its balance sheet as of December 31, 1974, as such liabilities have increased or diminished in the

¶ 24. Although we conclude that the agreement could reasonably be interpreted to include unknown and contingent tort liability, we do not agree with Columbia Propane that this is the only reasonable interpretation. The use of the word "outstanding" can reasonably be interpreted to narrow the liabilities assumed to those situations where at least the potential for liability is known; subparagraph 1(b)(ii) can reasonably be interpreted as simply restating that concept in different language; and paragraph 4(c) can reasonably be interpreted as the dissent suggests.

¶ 25. We also do not agree with Columbia Propane that we can resolve the ambiguity on this appeal by referring to its exhibits. Since the asset purchase agree-

ordinary course of business to the date [of the assumption]." The parties agreed the purchaser was not liable under this language. *Id.* at 883.

In a case cited by neither party, *Philadelphia Electric Co. v. Hercules, Inc.*, 762 F.2d 303, 309 (3rd Cir. 1985), one issue was whether the successor corporation had assumed by contract liability for claims of negligence and nuisance for contamination that had occurred prior to the date of the agreement but was unknown at the time. The court decided it had. The agreement provided for the "assumption by [the purchaser] . . . of all the debts, obligations and liabilities [of the seller] . . . as of the Closing Date . . .," excepting certain liabilities not applicable. *Id.* The court decided that under this language the purchaser had assumed all liabilities incurred by the seller as of the closing, with those few exceptions, including unknown and contingent liabilities. *Id.* at 309–10. This case is consistent with our conclusion that the contract language here can be reasonably interpreted to include the tort liability of People's Gas that was unknown and contingent; we do not hold this is the only reasonable interpretation, as did the court in *Philadelphia Electric*, because of the modifier "outstanding," which was not used in that contract.

603

ment does not clearly express whether the parties intended that Wisconsin Gas assume liability for torts arising out of contamination that had occurred before closing, the issue of the parties' intent is for a trier of fact. *See Armstrong*, 88 Wis. 2d at 153. While the exhibits Columbia Propane points to may support its interpretation of the agreement—such as the contemporaneous communications between the PSC and People's Gas—they are not conclusive. And at least one exhibit submitted by Wisconsin Gas arguably supports its position that the parties did not contemplate liability arising out of contamination: the affidavit of Robert Karnauskas opines that prior to the early to mid-1970s, parties to property transactions would not have considered the potential subsurface environmental conditions at issue in this case.

¶ 26. With respect to liability for the subrogation, indemnification, and contribution claims, however, we conclude the asset purchase agreement is not ambiguous. These claims are based on the sums Columbia Propane has had to pay or will have to pay under Wisconsin's Remedial Action statutes, chapter 292. The relevant provisions of these statutes were first enacted in 1977.[13] The precise issue of contract interpretation presented by these claims is whether—even if the parties intended that Wisconsin Gas would assume the

---

[13] 1995 Wis. Act 227 renumbered the provisions of chs. 144, 147, 159 and 162, (1993–94), to chs. 280–299 (1995–96). Because Columbia Propane has not provided details of the State's proceeding against it, we are uncertain of under which statutory provision the State has proceeded. However, we are aware of no applicable statute that would have been in existence at the time of the asset purchase agreement or anytime soon thereafter.

liabilities of People's Gas for unknown and contingent tort claims arising out of contamination that had already occurred—did they intend that Wisconsin Gas would assume liabilities that would arise under a statute enacted years after the closing? We conclude the contract language plainly expresses the parties' intent that Wisconsin Gas would not assume these liabilities. The language in subparagraph 1(b)(ii) plainly excludes "any obligations or liabilities incurred by People's Gas after the closing," and we can see no reasonable interpretation of that clause that would not exclude liability under a statute that had not been enacted at the time of closing. Similarly, the warranty that there are no liabilities of any nature in paragraph 4(c) cannot reasonably be interpreted to refer to liability under a statute that did not then exist.

¶ 27. Our conclusion that the parties did not intend that Wisconsin Gas would assume liability for claims based on subsequently enacted environmental statutes is consistent with the court's reasoning in *John S. Boyd Co.* One of the principles the court there applied in arriving at its conclusion that the 1973 contract language did not cover CERCLA liability was that statutes enacted after the execution of an agreement are not commonly considered to become part of the agreement unless its provisions clearly establish that the parties intended to incorporate subsequent statutory enactments into their agreement. *John S. Boyd Co., Inc.*, 992 F.2d at 406, 407.

*Nature of Claims Against Wisconsin Gas*

¶ 28. The second and third issues raised in Columbia Propane's challenge to the trial court's grant of summary judgment are related: whether Columbia Propane must plead and prove third-party beneficiary

status in order to be entitled to any relief against Wisconsin Gas and whether the six-year statute of limitations applies to its claims. Columbia Propane contends that although the asset purchase agreement is the basis for any liability Wisconsin Gas has for People's Gas's torts, it is not asserting a claim for breach of contract against Wisconsin Gas; rather, it is asserting the tort claims for which, under its view of the asset purchase agreement, Wisconsin Gas has assumed liability. Therefore, continues Columbia Propane, it need not separately allege and prove that it is a third-party beneficiary and the statute of limitations for contracts does not apply.

¶ 29. The general rule is that a person not a party to a contract may not recover on the contract unless that person is a third-party beneficiary, which means that the agreement was intentionally entered into directly and primarily for the benefit of that person. *Ampex Corp. v. Sound Inst., Inc.*, 44 Wis. 2d 674, 683, 172 N.W.2d 170 (1969). As Columbia Propane points out, when a successor corporation has agreed to assume the "existing debts, liabilities and obligations" of its predecessor, creditors are considered third-party beneficiaries of that contract and may sue the predecessor for direct payment of the debt assumed. *Lenz*, 111 Wis. at 203–05. However, it appears there is no Wisconsin case that has decided whether a plaintiff suing a successor corporation for the torts of its predecessor, on the ground that the successor explicitly or implicitly agreed to assume liability for those torts, must sue on the contract as a third-party beneficiary or may sue in tort. In the cases that have discussed the four methods for establishing successor liability for torts, the actions were brought as tort actions. *See, e.g., Fish*, 126 Wis. 2d

at 297; *Tift v. Forage King Indus., Inc.*, 108 Wis. 2d 72, 75, 322 N.W.2d 14 (1982); *Cody v. Sheboygan Mach. Co.*, 108 Wis. 2d 105, 109, 321 N.W.2d 142 (1982).[14] However, because an agreement to assume tort liability was not the alleged basis for the purchasing corporation's liability in any of these cases, there was no need for the court in these cases to address the issue confronting us.

¶ 30. Wisconsin Gas argues that two cases support its position that Columbia Propane may seek relief from it for the torts of People's Gas only as a third-party beneficiary on a contract claim, with the six-year contract statute of limitations applying: *Kuhl v. Chicago & Northwestern Railway Co.*, 101 Wis. 42, 77 N.W.155 (1898), and *City of Franklin v. Crystal Ridge, Inc.*, 180 Wis. 2d 561, 509 N.W.2d 730 (1994). However, because neither case addressed the purchasing corporation's liability for torts, they do not provide either authority or guidance for resolving the issue before us.

¶ 31. In *Kuhl*, the owner of property on one side of the street sought compensation for the injury to his property resulting from the construction and maintenance of railroad tracks on the opposite side of the street. The corporation that constructed the tracks sold its assets to another corporation, and the plaintiff sued the purchasing corporation. The court concluded that the plaintiff's cause of action was on an implied contract to compensate him under a particular statute, *Kuhl*, 101 Wis. 2d at 50–51. One issue was the effect on the statute of limitations of the purchasing corporation's agreement to assume the liabilities of the selling corporation. The court held that the agreement created a

---

[14] *See also Sedbrook v. Zimmerman Design Group, Ltd.*, 190 Wis. 2d 14, 17, 526 N.W.2d 758 (Ct. App. 1994); *Schweiner v. Hartford Accident & Indem. Co.*, 120 Wis. 2d 344, 347, 354 N.W.2d 767 (Ct. App. 1984).

new obligation to which the plaintiff was a third-party beneficiary and the statute of limitations on the plaintiff's implied contract claim began to run from that date, with the result that the suit was timely. *Id.* at 56–58.[15] Neither the reasoning nor the holding in *Kuhl* suggests that when a plaintiff brings a claim against a successor corporation for the torts of the predecessor, rather than a claim for an amount due under a contract with the predecessor, the same analysis applies.

¶ 32. *Crystal Ridge*, 180 Wis. 2d at 561, has even less relevance than *Kuhl* since it did not involve an agreement to assume a selling corporation's liability. *Crystal Ridge* involved a lease of land in which the lessee allegedly agreed to pay the property taxes. We held that the City of Franklin could enforce that

---

[15] Wisconsin Gas apparently reads *Kuhl v. Chicago & Northwestern Railway Co.*, 101 Wis. 42, 77 N.W. 155 (1898), to hold that the statute of limitations in general begins to run on the date of the agreement to assume the selling corporation's liabilities. However, the statute of limitations for an action for breach of contract begins to run from the date of the breach, not from the date of the contract. *CLL Assocs. Ltd. P'ship v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 609, 497 N.W.2d 115 (1993). As we read *Kuhl*, the reason the court stated that the six-year contract statute of limitations began to run from the date of that assumption agreement was that the amount was already due the plaintiff under the implied contract on the date of the assumption agreement. The treatise cited by Wisconsin Gas interprets *Kuhl* as we do. MICHAEL B. APFELD ET AL., CONTRACT LAW IN WISCONSIN § 8.35 (2d ed. 2000) ("This statement [in *Kuhl*], in turn, appears to presume that immediate performance was due at the time the obligation was assumed."). The significance of *Kuhl* is that, unlike in some other states, in Wisconsin the agreement to assume a debt that another party owes a third party extends the statute of limitations for recovering the money owed. 13 RICHARD A. LORD, WILLISTON ON CONTRACTS § 37:60 (4th ed. 2000).

contractual provision as a third-party beneficiary and require the lessee to pay the taxes it had levied, *id.* at 567. The supreme court reversed, concluding that the buildings were exempt from taxation and the lessee had not agreed to pay invalidly assessed taxes. *Id.* at 572.

¶ 33. In the absence of controlling Wisconsin authority, we look to cases from other jurisdictions. We have located only two that are relevant, both supporting the conclusion that Columbia Propane may bring tort claims against Wisconsin Gas. In *Gwinnett Hospital System Inc. v. Massey*, 469 S.E.2d 729, 730 (Ga. Ct. App. 1996), the plaintiff sued the corporation that owned and operated a hospital for malpractice committed when another entity owned and operated the hospital, alleging that the current owner was liable because it had agreed to assume all the liabilities and obligations of the prior owner. The current owner argued that the plaintiff was not a third-party beneficiary of that agreement. *Id.* at 730. The court rejected this argument, stating: "The claim here is for breach of a medical duty, not for damages resulting from a breach of contract between two other parties, and the action was not brought to enforce a contract." *Id.* The court also rejected the argument that the current owner had agreed only to indemnify the prior owner if the prior owner was first found liable. *Id.* at 731. The court concluded that because of the agreement, the plaintiff could directly sue the current owner for malpractice. *Id.*

¶ 34. In *Niven v. E.J. Bartells Co.*, 983 P.2d 1193, 1195 (Wash. Ct. App. 1999), the plaintiff filed a personal injury suit for damages arising from asbestos exposure against a corporation that allegedly had agreed to assume the liabilities of the corporation that manufactured the asbestos. The successor corporation argued that, because the basis for its liability was a contract,

the plaintiff's suit sounded in contract rather than tort and the plaintiff needed to be a third-party beneficiary, which he was not. The court stated, without citation, that the plaintiff's suit was a personal injury action, not a contract action, *id*. at 1196; the court proceeded to apply the statute of limitations for personal injury actions, including the discovery rule. *Id*. at 1197–98.

¶ 35. Although neither of these cases articulates a reasoning for the results they reach, our own analysis leads us to the same conclusion. First, characterizing Columbia Propane's claim against Wisconsin Gas as a claim to enforce a contract overlooks the underlying torts asserted, which are the primary claims that need to be tried. The asset purchase agreement is the source of Columbia Propane's right, if any, to recover against Wisconsin Gas, but if that agreement is interpreted to impose liability on Wisconsin Gas for the torts alleged in the complaint, Columbia Propane will need to prove those torts just as it would in an action against People's Gas. Second, if we characterize Columbia Propane's claim against Wisconsin Gas as a contract claim, the application of a contract statute of limitations is problematic. The statute of limitations on a contract claim begins to run on the date of the breach.[16] Assuming for purposes of illustration that Wisconsin Gas agreed to assume liability for the torts alleged in Columbia Propane's complaint, when did the breach of that agreement occur? Wisconsin Gas suggests it has not breached its agreement with People's Gas until there is a judgment against People's Gas for tort damages that Wisconsin Gas is obligated to pay, is asked to pay, and refuses to pay. But who does Columbia Propane sue to obtain that judgment? As we pointed out in *Tift v.*

---

[16] *See* footnote 15.

*Forage King Industries, Inc.*, 102 Wis. 2d 327, 331, 306 N.W.2d 289 (Ct. App. 1981), *reversed on other grounds,* 108 Wis. 2d 72, 77, 322 N.W.2d 14 (1982), generally when a corporation is purchased by a second corporation, the first disappears as a legal entity and, consequently, cannot be sued. If we adopt Wisconsin Gas's approach, it is difficult to see when a plaintiff could ever recover for the selling corporation's tort from the purchasing corporation, even though the latter agreed to assume liability for the tort. Finally, allowing direct suit in tort against a purchasing corporation that has agreed to assume the selling corporation's liability for that tort is consistent with the manner of asserting claims where other grounds for successor liability are asserted.

■■■

¶ 36. For these reasons, we conclude that, if Wisconsin Gas agreed to assume liability for the torts of People's Gas alleged in Columbia Propane's complaint, Columbia Propane may sue Wisconsin Gas in tort for damages, as it has done. The complaint need not plead a claim for breach of contract, Columbia Propane need not plead and prove third-party beneficiary status, and the statute of limitations for a contract action does not apply. Therefore, none of these was a proper basis for granting summary judgment against Columbia Propane.

*Amendment to Complaint*

¶ 37. Columbia Propane contends that the trial court erroneously exercised its discretion in denying its motion to amend its complaint by adding a claim for breach of contract, allegations on its third-party beneficiary status, and allegations on constructive fraud. Since we have already concluded that Columbia Propane may sue Wisconsin Gas for the tort claims it has

alleged without alleging breach of contract or third-party beneficiary status, there is no need for Columbia Propane to add a contract claim or third-party beneficiary allegations: its desire to do so was prompted by the court's rulings that we have concluded were erroneous. We therefore address only the proposed amendment to allege constructive fraud. The constructive fraud allegations would, if permitted, allow Columbia Propane to attempt to establish that Wisconsin Gas is liable for its claims against People's Gas under the fourth exception to the rule against successor liability—that the transaction was entered into fraudulently to escape liability for such obligations. *Fish*, 126 Wis. 2d at 298.

¶ 38. Since the decision whether to permit an amendment to a complaint later than six months from its filing is within the discretion of the trial court, we affirm if the trial court has properly exercised its discretion. *American Fed'n State, County & Mun. Employees Local 1901 v. Brown County*, 146 Wis. 2d 728, 737, 432 N.W.2d 571 (1988). A trial court properly exercises its discretion when it considers the relevant facts, applies the correct law, and articulates a reasonable basis for its decision. *Krebs v. Krebs*, 148 Wis. 2d 51, 55, 435 N.W.2d 240 (1989).

¶ 39. When the trial court made its decision to deny an amendment to allege constructive fraud, among the other facts it considered relevant was that it had already granted summary judgment in Wisconsin Gas's favor; the court decided it would be unfair to Wisconsin Gas to permit an amendment that would, in effect, resurrect the action but on another theory. Since we have concluded that the trial court's grant of summary judgment was in error with respect to the tort

claims, and we are remanding for a trial to resolve the ambiguity in the asset purchase agreement, a significant part of the reasoning that led the trial court to deny the amendment is no longer valid. In addition, there are new facts bearing on the appropriateness of an amendment that the trial court has not had the opportunity to consider. For example, it appears some of the evidence that Columbia Propane offers to support its interpretation of the asset purchase agreement is the same evidence that supports its assertion that Wisconsin Gas is liable for People's Gas's torts because of constructive fraud.

¶ 40. Because the trial court based its decision to deny the motion to amend the complaint to add allegations of constructive fraud on an erroneous view of Wisconsin Gas's entitlement to summary judgment, and because the facts relevant to the court's decision have changed, we are persuaded that we should reverse the trial court's order denying the motion to add those allegations. On remand, the court will have the opportunity to reconsider the motion in light of this opinion.[17]

## CONCLUSION

¶ 41. We affirm the trial court's decision granting summary judgment for Wisconsin Gas with respect to the claims for subrogation, indemnification, and contribution. We reverse that decision with respect to the tort claims and remand for a trial on the issue of whether

---

[17] Nothing in our opinion precludes the trial court from considering Wisconsin Gas's objections to the proposed amendment on the grounds that there is no factual or legal basis for the claim of constructive fraud.

the parties to the asset purchase agreement intended Wisconsin Gas to assume liabilities for those torts. If the determination is that the parties to that agreement did intend that Wisconsin Gas assume liability for any tort of People's Gas alleged in the complaint, further proceedings will, of course, be necessary on the particular tort claim or claims.

¶ 42. On remand, the court will reconsider Columbia Propane's motion to amend the complaint to add allegations of constructive fraud.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.

¶ 43. ROGGENSACK, J. (*dissenting*). The majority concludes that the asset purchase agreement between People's Gas and Wisconsin Gas is ambiguous in regard to the liabilities of People's Gas that Wisconsin Gas agreed to assume. In so doing, it creates uncertainty in commercial transactions throughout Wisconsin where asset purchase agreements have been common occurrences. Because I conclude that the agreement is an unambiguous statement of the parties' intent that Wisconsin Gas assume only those liabilities of People's Gas that were disclosed at closing and because I would not grant leave to amend the pleadings, I must respectfully dissent.

¶ 44. When one company purchases the assets of another company, the general rule is that it does not succeed to the selling company's liabilities. *Fish v. Amsted Indus., Inc.*, 126 Wis. 2d 293, 298, 376 N.W.2d 820, 823 (1985). There are four exceptions to the general rule:

> "(1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's

liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and the seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations."

*Id.* (quoting *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 439 (7th Cir. 1977)).

¶ 45.　The majority opinion focuses on the first exception and concludes that the asset purchase agreement may be read to show that Wisconsin Gas impliedly agreed to assume all of People's Gas's unknown liabilities. I conclude the majority's conclusion that the asset purchase agreement is ambiguous is erroneous in three major respects:　(1) it does not parse the agreement with an acknowledgement of the reason parties enter into such agreements—to allocate the risks of the transaction between themselves; (2) it does not apply *Fish* to this agreement; and (3) it misconstrues the promise of People's Gas's warranties.

¶ 46.　The provisions used in the asset purchase agreement are not unique to this business contract. Disclosure of liabilities for which the purchaser is agreeing to assume responsibility and a warranty that there are no undisclosed liabilities for which the purchaser will be responsible are standard provisions when one business is buying the assets of another. Arthur L. Corbin, CORBIN ON CONTRACTS § 14 (ed. 1952). Such agreements should be construed as reasonably understood by business people involved in a business asset purchase. *See* 17A AM. JUR.2d § 405 (1991).

¶ 47.　In order to determine whether the asset purchase agreement could reasonably be interpreted to show that Wisconsin Gas impliedly agreed with People's Gas to assume an unlimited amount of undisclosed

liabilities, we interpret the agreement as a matter of law. *Wausau Underwriters Ins. Co. v. Dane County*, 142 Wis. 2d 315, 322, 417 N.W.2d 914, 916 (Ct. App. 1987). A written agreement is not ambiguous simply because two parties to a lawsuit give it different meanings. *Waukesha Concrete Prods. Co. v. Capitol Indem. Corp.*, 127 Wis. 2d 332, 339, 379 N.W.2d 333, 336 (Ct. App. 1985). Rather, it is to be interpreted as it would be understood by persons in the business to which the contract relates. *McNamee v. APS Ins. Agency, Inc.*, 112 Wis. 2d 329, 333, 332 N.W.2d 828, 830 (Ct. App. 1983).

¶ 48. Here, we review a contract relating to the purchase of the assets of one company by another company. *Fish* states the controlling rule of law for interpreting the agreement. *Fish* instructs that unless the buyer agrees to assume liabilities of the seller, the buyer receives no such liabilities as a result of the transaction. While the majority opinion cites *Fish*, it does not apply it. Instead it reverses its holding and concludes that because Wisconsin Gas did not *exclude*[1] the assumption of liability for People's Gas's then unknown contamination, it is reasonable to conclude Wisconsin Gas did assume it. That reasoning effectively reverses *Fish* because the rule of law from *Fish* is that a buyer of a business gets no liabilities of the seller's business unless he chooses to assume them. *Fish*, 126 Wis. 2d at 298, 376 N.W.2d at 873.

¶ 49. The asset purchase agreement must be read as a whole, giving a reasonable meaning to all its

---

[1] The majority reasons, "With respect to tort liability, it is reasonable to interpret subparagraph 1(b)(ii) to *exclude* from the liabilities that Wisconsin Gas is assuming liability for any torts that People's Gas committed after closing, but not for those that People's Gas committed before closing." Maj. Op. ¶ 21 (emphasis added).

provisions. *See Berg v. Schultz*, 190 Wis. 2d 170, 175, 526 N.W.2d 781, 783 (Ct. App. 1994). The parties expressed their intent about liabilities in several paragraphs of the agreement. Paragraph 1(a) first references liabilities that Wisconsin Gas is accepting with the purchase of People's Gas's assets. It states:

> Such sale, conveyance, transfer and delivery shall be made free and clear of any liability, obligation, imperfection of title, lien or encumbrance except only those referred to in paragraph 4(d) hereof and those liabilities and obligations which are to be assumed by Milwaukee[2] at the closing as hereinafter provided, and People's Gas agrees to indemnify and save Milwaukee harmless with respect to any liability of People's Gas which is not assumed by Milwaukee hereunder.

People's Gas was obligated to transfer its assets "free and clear of any liability" except as stated. Therefore, if Wisconsin Gas has any liability for the environmental contamination at issue here, the assumption of that liability must be specified in paragraph 4(d) or it must have been assumed at the closing as set forth later in the asset purchase agreement. The environmental contamination is not listed or described in paragraph 4(d) nor was it disclosed at closing.

¶ 50. Paragraph 1(b) also addresses the issue of liability. It states:

> Milwaukee hereby agrees . . . in reliance on the representations and warranties herein contained of People's Gas, to purchase the Assets from People's Gas . . . and to assume all of the then outstanding debts, obligations, contracts and liabilities of People's

---

[2] Wisconsin Gas is referred to by its former name of Milwaukee Gas Light Company in the agreement, but I will refer to it as Wisconsin Gas outside of the quoted passages.

Gas, provided, that Milwaukee shall have no liability with respect to the following: . . . (ii) any obligations or liabilities incurred by People's Gas after the closing; (iii) Federal or state income taxes of People's Gas; . . . (v) legal, accounting and other fees and expenses incurred by People's Gas in connection with its liquidation and dissolution or in connection with the making or performing of this Agreement or the transactions contemplated hereby.

By this paragraph, Wisconsin Gas limited the liabilities of People's Gas that it was agreeing to assume to those that were "then[3] outstanding." In the same sentence, it also agreed to assume "debts, obligations [and] contracts," so long as they were "then outstanding" and not otherwise listed as an exception to those liabilities that were then outstanding but for which Wisconsin Gas was assuming no responsibility. The paragraph also made clear that Wisconsin Gas was entering into the transaction in reliance on People's Gas's representations and warranties.

¶ 51. The majority construes "then outstanding" differently for liabilities than it does for debts, concluding that "[i]f we were interpreting 'outstanding' in relation to 'debt,' we would agree with the trial court and Wisconsin Gas that the parties meant 'unpaid' or 'uncollected' [debt] . . . [and] that the parties were referring to debts that were known at the time of closing." Maj. Op. ¶ 20. As the modifying phrase "then outstanding" directly precedes the words, "debts, obligations, contracts and liabilities of People's Gas" in the same sentence, I conclude that reasonable businesses in the positions of People's Gas and Wisconsin Gas would understand the modifying phrase in the same way for

_____

[3] Webster defines "then" as "at that time." WEBSTER'S NEW COLLEGIATE DICTIONARY 1209 (ed. 1974).

each of the nouns it precedes. Additionally, because "then outstanding" implies a time certain, I further conclude that "then outstanding" unambiguously refers to the status of People's Gas's debts, obligations, contracts and liabilities at closing.

¶ 52. Paragraph 2 provides additional support for this conclusion. It is important in determining the liabilities Wisconsin Gas agreed to assume because it sets the purchase price at $105,000 plus a floating amount determined by a re-balance of the assets and liabilities at closing. The paragraph defines the floating amount as follows:

> an amount equal to the amount by which the net book value of the Assets at the time of closing shall be more than the net book value of the Assets at September 30, 1959. . . . Any differences of opinion between the parties as to the determination of the net book value of the Assets as aforesaid or as to the value of any asset or amount of any liability shall be determined by such appraiser as shall be agreed upon by Milwaukee and People's Gas.

I conclude that no reasonable business purchaser who contracted to fine-tune the purchase price at closing by balancing the value of the assets and liabilities of People's Gas on that date would agree to assume liability for tort claims that had unlimited damages exposure simply because those claims had not been disclosed at closing. Instead, there are many contract provisions, most specifically, the warranty provisions, which are unambiguous statements of an agreement to limit Wisconsin Gas's exposure for charges which would lessen the value of the assets it was purchasing.

¶ 53. People's Gas's warranties are set out in paragraph 4. Warranties are the representations of a seller to a buyer of the existence, or the non-existence,

of a fact upon which the buyer may rely. 17A Am. Jur.2d § 410. Here, People's Gas warrants specifically "[a]s an inducement to Milwaukee" to enter into the transaction that:

> People's Gas has *no liabilities of any nature, whether accrued, absolute, contingent or otherwise, and whether for taxes, contract or tort claims or otherwise,* for which adequate provision has not been made in Exhibit A[4] or by insurance. . . . There are no actions, suits or proceedings pending or threatened against or affecting People's Gas which are not fully covered by insurance or which would materially adversely affect the financial position or Assets or operations of People's Gas.

(Emphasis added.) I agree with the majority opinion that the warranty People's Gas made to induce Wisconsin Gas to buy its assets is very broad. It unambiguously establishes that Wisconsin Gas will not be responsible for any liabilities that are not on the balance sheet or listed in paragraph 4(d), which are not at issue here, whether those liabilities exist at closing or not. The risk for such liabilities remains with People's Gas. I fail to understand the majority's reasoning that the breadth of the warranty shows there must have been liabilities that Wisconsin Gas was assuming that were not on the balance sheet. To the contrary, the warranty was the promise of People's Gas that there were "no liabilities of any nature, whether accrued, absolute, contingent or otherwise, and whether for taxes, contract or tort claims or otherwise," for which Wisconsin Gas would be liable.

---

[4] Exhibit A is the People's Gas balance sheet dated September 30, 1959 which discloses nothing relevant to Columbia's claim against Wisconsin Gas.

¶ 54. The majority concludes that Wisconsin Gas agreed to accept liabilities that under the warranty it had a right to believe did not exist because if such liabilities did exist Wisconsin Gas could sue People's Gas for breach of warranty. Maj. Op. ¶ 22. A practical application of the majority's conclusion about the effect of the warranty would result in the following scenario: Buyer agrees to assume all undisclosed liabilities of Seller because Seller has warranted that only the disclosed liabilities, A and B, exist. If liability C arises, Buyer can sue Seller for breach of warranty. However, Seller will have nothing with which to pay any resulting judgment because Seller transferred all of its assets to Buyer under the asset purchase agreement, which Buyer well knows. From a business perspective, no reasonable Buyer would ever agree to such a transaction because Buyer would be assuming unending, unknown liabilities in exchange for the right to sue a company Buyer knows has no assets. As a matter of law, that cannot be a reasonable interpretation of the asset purchase agreement. Rather, the warranties were promises about the non-existence of undisclosed liabilities made to induce Wisconsin Gas to enter into the contract. People's Gas's warranties gave Wisconsin Gas the right to believe there were no undisclosed liabilities, yet the majority concludes Wisconsin Gas agreed to assume liabilities Wisconsin Gas believed did not exist. I conclude that is an unreasonable interpretation of the asset purchase agreement.

¶ 55. Additionally, the majority's reliance on the insurance provision of paragraph 4 for its conclusion that the agreement could be read to allocate undisclosed liabilities to Wisconsin Gas is confusing to me and appears to ignore paragraph 7(b) which describes the liabilities that are covered by insurance. Paragraph

7(b) provides further evidence that Wisconsin Gas assumed no contingent or undisclosed liabilities because in addition to People's Gas's warranties and representations, Wisconsin Gas also required the opinion of People's Gas's counsel as an additional assurance that there would be no surprises after closing. Paragraph 7(b) addresses the insurance issue as well as other assurances that all liabilities have been disclosed and states in relevant part:

> People's Gas shall deliver to Milwaukee at the time of closing an opinion of its counsel . . . stating . . . that such counsel does not know or have reason to know of any legal or governmental action or proceeding pending or threatened against or relating to People's Gas, its property or business, except such as are covered by insurance for claims arising out of accidents occurring on May 27, 1958 and July 25, 1959. . . .

Accordingly, I conclude the agreement is unambiguous in precluding liability for Columbia's claims, and therefore, I would affirm the circuit court's decision in that regard.

¶ 56. I would also affirm the circuit court's decision to deny leave to re-plead, contrary to the door which is left open in the majority opinion. There is no reasonable basis for the allegation that Wisconsin Gas entered into the asset purchase agreement fraudulently to escape liability for any obligation of People's Gas. As a foundational matter, Wisconsin Gas had no liability to attempt to escape because the general rule is that a company that purchases the assets of another company does not succeed to the selling company's liabilities. *Fish*, 126 Wis. 2d at 298, 376 N.W.2d at 823. The fourth *Fish* exception requires fraud perpetrated to escape liability. *Id.*

¶ 57. The parties agree that Wisconsin Gas had no knowledge of the contamination that occurred when People's Gas owned the property. Fraud requires an intent to deceive in order to induce another to act on the false statement. *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 25, 288 N.W.2d 95, 99 (1980) (quoting *Whipp v. Iverson*, 43 Wis. 2d 166, 169–70, 168 N.W.2d 201, 203–04 (1969)). Wisconsin Gas could not have defrauded anyone if it did not know of the contamination or at the very least recklessly make some factual representation about it.[5] Therefore, there is no basis on which to claim Wisconsin Gas fraudulently entered into the asset purchase agreement and thereby come within the fourth exception to the general rule set out in *Fish*. I also agree with the circuit court that, because Wisconsin Gas did not assume liability for the contamination caused by People's Gas, re-pleading to add third-party contract claims is unnecessary. Accordingly, I would affirm the circuit court on all issues; therefore, I must respectfully dissent from the majority opinion.

---

[5] Failure to disclose can provide the basis for a claim of fraud only if there is a duty to disclose. *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 27, 288 N.W.2d 95, 99 (1980). One cannot have a duty to disclose something one does not know.